IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 11-cv-00789-CMA-BNB

NAN J. BAUMANN,

Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,

Defendant.

_____

**ORDER**
_____

This matter arises on **Defendant's Motion to Preclude Plaintiff's Expert Richard Hodges' Opinions** [Doc. # 93, filed 12/6/2011] (the "Motion to Exclude"), which is GRANTED.

I.

The following facts are derived from the plaintiff's statement of claims contained in the Scheduling Order [Doc. # 14]:

The case arises on the plaintiff's claim for underinsured motorist ("UIM") insurance benefits. The plaintiff, an 89 year-old woman at the time of the accident, was a pedestrian struck by an automobile driven by Elise Henderson. The plaintiff suffered a shattered left leg, lacerations to her head, and a closed head injury. Prior to the accident, the plaintiff lived independently. After the accident, she requires assistance with her daily activities and cannot live independently. The plaintiff's medical bills for treatment of the injuries suffered in the accident exceed $200,000. In addition, the plaintiff claims permanent physical impairment.

Ms. Henderson's auto insurance had liability limits of $50,000 per person, which have been paid to the plaintiff. At the time of the accident, the plaintiff was insured under a policy issued by Ohio Casualty Insurance Company ("Ohio Casualty") with uninsured/underinsured motorist ("UM/UIM") coverage of $50,000, which also have been paid to the plaintiff.

The plaintiff's claims against American Family Insurance, the defendant here, are based on the following:

> In addition to her Ohio Casualty policy, Ms. Baumann [the plaintiff] was a resident-relative of an individual who was insured by Defendant American Family Mutual Insurance Company . . . under three (3) separate automobile liability insurance policies issued by American Family, each of which provided UM/UIM benefits in the amount of $100,000.00. On or about October 13, 2010 and November 10, 2010, Ms. Baumann requested that Defendant timely evaluate her claim and pay the $300,000.00 UIM motorist benefits for the significant damages sustained when she was run over by Henderson on February 5, 2010. At the time that Ms. Baumann requested that American Family fairly and timely evaluate her request for UIM benefits, she provided Defendant with any and all medical bills and records available that supported her claim for benefits. Defendant unreasonably delayed in evaluating Ms. Baumann's claim by continually requesting additional information that would not substantially effect a fair evaluation of the claim. When American Family finally responded to Ms. Baumann's request that it pay the UIM benefits rightfully due and owing to her, Defendant offered a total of $22,000.00, even though Ms. Baumann's damages and injuries far exceeded the limits of her available UIM benefits.
>
> Prior to Defendant's refusal to pay Ms. Baumann any UIM benefits under the policy of insurance that insured her, Ms. Baumann, through her attorneys, provided documentation to American Family that her economic and non-economic damages incurred as a result of the February 5, 2010 collision far exceeded the $100,000.00 received from State Farm and Ohio Casualty and the additional $300,000.00 UIM benefits available under Defendant's policies which insured Ms. Baumann. As provided to Defendant, Ms. Baumann's medical bills, *alone*, were in excess of $200,000.00. As such, her claim far exceeded the $22,000.00

> offered by Defendant and represented a significant and unreasonable under-evaluation of her claim.
>
> Plaintiff has brought claims against Defendant for breach of contract, bad faith breach of contract, and for violations of C.R.S. § 10-3-1115(1)(a) and C.R.S. § 10-3-1116(1), for unreasonably delaying and denying her request for payment of her UIM benefits.

Scheduling Order [Doc. # 14] at pp. 3-5.

## II.

Richard Hodges is a lawyer who has been retained by the plaintiff to offer expert opinions concerning insurance industry standards and American Family's claims handling. He has substantial experience in the insurance industry. He worked for Allstate Insurance Company from 1968 through 1982 as an adjuster and manager. He earned his law degree in 1972. He has been engaged in the private practice of law since 1984; is a frequent lecturer on issues concerning insurance coverage, insurance bad faith, and related topics; and has testified as an expert witness in at least 58 cases. The defendant does not challenge Mr. Hodges' qualifications as an expert.

The defendant seeks to exclude Mr. Hodges from offering the following opinions at trial:

First, the defendant seeks to exclude Mr. Hodges' opinion concerning American Family's "duty" to pay uncontested amounts. The opinion includes the following:

> Where there is no dispute concerning whether the insured has coverage, the insurance company should pay that portion of the claim over which there is no dispute. It cannot withhold what is undisputed based on a dispute as to the remainder. Insurance personnel "should promptly pay all amounts they know the insurer owes and should negotiate in a forthright, honest, and flexible manner over any amounts that are in dispute. *The Claims Environment*, 1st Ed., James Markham, Kevin M. Quinley, Layne S. Thompson, 1993, p. 19.
>
>        \*   \*   \*

> American Family had the duty to pay its insured what it undisputedly concluded Ms. Baumann was entitled. At a minimum, that amount was $32,000 established as American Family's evaluation of her claim on February 23, 2011. Alternatively, that amount will be what a fact finder might conclude was a reasonable amount that American Family should have determined Ms. Baumann was entitled to on a particular date after October 13, 2010. American Family satisfied itself concerning all of the elements necessary to arrive at the conclusion that Ms. Baumann was entitled to UIM benefits purchased for the protection of such insured under circumstances such as this.

Id. at p. 10. The opinion was supplemented to include Mr. Hodges' statement that "American Family was and is obligated to tender to its insured the undisputed amount that it has concluded represents the evaluation of its insured's UM/UIM claim." Supplemental Statement of Opinions [Doc. # 93-4] at p. 3.

Second, the defendant seeks to exclude Mr. Hodges' testimony that "[o]ther than the initial investigation into the resident relative status of Ms. Baumann and some review of medical records, there was absolutely no investigation directed toward identifying, considering or evaluating the non-economic elements of Ms. Baumann's claim." Hodges Statement of Opinions [Doc. # 93-2] at p. 9.

Finally, the defendant seeks to prevent Mr. Hodges' testimony that:

> An additional systematic hurdle built into American Family's incredibly confused and convoluted approach to the evaluation of claims is the requirement to submit bills through American Family's computer program that is supposedly geared toward testing the *reasonableness* of the cost of medical services by geographic area (ebill). Ms. Pachl needed computer friendly information (i.e. UB's) so she could comply with this requirement, hoop or hurdle.
>
>                  \*   \*   \*
>
> American Family's unreasonable handling of Ms. Baumann's claim for UIM benefits is further evidenced by the continual request for additional information including the late need to have

4

>the UB documentation, probably only for the purpose of feeding compatible information through American Family's ebill program.

Id. at pp. 3, 10 (original emphasis).

### III.

The proponent of expert testimony bears the burden of showing that the expert's testimony is admissible. United States v. Nacchio, 555 F.3d 1234, 1241 (10th Cir. 2009). The Tenth Circuit Court of Appeals has described the burden as follows:

>Under Rule 702, the district court must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony. In determining whether expert testimony is admissible, the district court generally must first determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion. Second, if the expert is sufficiently qualified, the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology, as set forth in Daubert [v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993)].
>
>Reliability questions may concern the expert's data, method, or his application of the method to the data. The party offering the expert must show that the method employed by the expert . . . is scientifically sound and that the opinion is based on facts which satisfy Rule 702's reliability requirements. . . . In making a reliability determination, generally, the district court should focus on an expert's methodology rather than the conclusions it generates.

Id. (internal quotations and citations omitted except as shown).

Although Daubert concerned experts offering scientific testimony, the court's gatekeeping function to ensure that expert testimony is both relevant and reliable was extended to all expert testimony in Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147 (1999).

Although Daubert instructs that the court's focus should be on the expert's methodology

5

rather than the conclusions it generates:

> [C]onclusions and methodology are not entirely distinct from one another. . . . [N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.

General Electric Co. v. Joiner, 522 U.S. 136, 146 (1997) (internal citation omitted).

In Specht v. Jensen, 853 F.2d 805, 808-09 (10th Cir. 1988), the Tenth Circuit Court of Appeals recognized a special rule with respect to lawyers serving as expert witnesses:

> While other experts may aid a jury by rendering opinions on ultimate issues, our system reserves to the trial judge the role of adjudicating the law for the benefit of the jury. When an attorney is allowed to usurp that function, harm is manifest. . . .

The court in Specht cited with approval Marx & Co. v. Diner's Club, Inc., 550 F.2d 505 (2d Cir. 1977), where the Second Circuit Court of Appeals held that it was error to allow a lawyer to render his opinions on the legal obligations arising from a contract and on the legal significance of various facts in evidence. Specht, 853 F.2d at 808.

The Sprecht court explained further:

> The line we draw here is narrow. We do not exclude all testimony regarding legal issues. We recognize that a witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible. Indeed, a witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms. For example, we have previously held that a court may permit an expert to testify that a certain weapon had to be registered with the Bureau of Alcohol, Tobacco, and Firearms. In that case, however, the witness did not invade the court's authority by discoursing broadly over the entire range of the applicable law. Rather, the expert's opinion focused on a specific question of fact.
>
> \* \* \*
>
> [A]n expert's testimony is proper under Rule 702 if the expert does

> not attempt to define the legal parameters within which the jury
> must exercise its fact-finding function.  However, when the
> purpose of testimony is to direct the jury's understanding of the
> legal standards upon which their verdict must be based, the
> testimony cannot be allowed.  In no instance can a witness be
> permitted to define the law of the case.

Id. at 809-10 (internal citations and note omitted).

In United States v. Jensen, 608 F.2d 1349, 1356 (10th Cir. 1979), the circuit court noted that "an expert witness cannot state legal conclusions by applying law to the facts, passing upon weight or credibility of the evidence, or usurping the province of the jury by telling it what result should be reached." Accord A.E. By and Through Evans v. Independent School Dist. No. 25, 936 F.2d 472, 476 (10th Cir. 1991)(citing Jensen and stating that "an expert may not state legal conclusions drawn by applying the law to the facts"); Holman Enterprises v. Fidelity and Guaranty Ins. Co., 563 F. Supp. 2d 467, 472 (D. N.J. 2008)(holding that the court "must limit expert testimony so as to not allow experts to opine on what the law required or testify as to the governing law," and explaining that this prohibition on experts testifying as to their own legal conclusions is "so well established that it is often deemed a basic premise or assumption of evidence law--a kind of axiomatic principle.  In fact, every circuit has explicitly held that experts may not invade the court's province by testifying on issues of law") (internal quotations and citations omitted).

In Rieger v. Orlor, Inc., 427 F. Supp. 2d 99,  (D. Conn. 2006), the court distinguished between permitted expert opinions and impermissible opinions that invade the jury's province to apply the law to the facts:

> Kleiner's first opinion--that defendants could have accommodated
> plaintiff's disability without significant impact, but instead
> retaliated against plaintiff by moving her to a less desirable

> position . . .--includes two legal conclusions based on certain facts in the record and therefore impermissibly invades the jury's province to apply the applicable law to the facts of the case and reach ultimate legal conclusions. While Kleiner is qualified, given his education and experience in the human resources field, to opine on accommodations that could have been made, or are frequently made, to accommodate conditions such as plaintiff's insomnia, Kleiner's opinion is not framed in those terms. Rather, because Kleiner's opinion does not proffer any specialized knowledge, and invokes legal standards (*i.e.*, that defendants could have accommodated plaintiff's disability without significant impact, and that defendants retaliated against plaintiff), his opinion would "not *aid* the jury in making a decision, but rather attempts to substitute [his] judgment for the jury's."

(Internal quotations and citations omitted.)

A district court in Kansas considered the issue of expert lawyer testimony in the context of an insurance case and held that an expert could "explain claims handling practices generally and insurance industry standards relating to timely investigations, reservation of rights, and coverage determinations," but drew this distinction:

> On the other hand, . . . it would not assist the trier of fact for [the expert] to offer opinions that [plaintiff's] damages in the 2000 lawsuit fell within the definition of an "occurrence"; or that [the insurer] had no basis to apply the exclusion for "expected or intended injury"; or that [the insurer] was inconsistent in its handling of the two lawsuits; or that [the insurer] is barred by estoppel from denying coverage. Such opinions involve either a construction of contract terms that can be adequately explained to the jury without expert testimony . . ., or they contain factual conclusions as to which a jury is fully qualified to make on its own determination from the evidence presented. . . . In either case, such testimony would not assist the trier of fact.

Lone Star Steakhouse and Saloon, Inc. v. Liberty Mutual Ins. Group, 343 F. Supp. 2d 989, 1015 (D. Kan. 2004).

IV.

Mr. Hodges' opinions that "[w]here there is no dispute concerning whether the insured has coverage, the insurance company **should pay** that portion of the claim over which there is no dispute," (emphasis added); "American Family had a **duty** to pay its insured what it undisputedly concluded Ms. Baumann was entitled" (emphasis added); and "American Family was and is **obligated** to tender to its insured the undisputed amount that it has concluded represents the evaluation of its insured's UM/UIM claim," (emphasis added), are phrased in terms of a legal duties or obligations. These opinions improperly usurp the function of the trial judge to instruct the jury on the law.

Perhaps Mr. Hodges could have opined that it is an insurance industry standard to pay undisputed portions of claims while adjusting the disputed portions, but his opinions are not phrased in that manner. As the court noted in Marx & Co., 550 F.2d at 509, testimony of experts concerning ordinary practices or trade customs in an industry are admissible "to enable the jury to evaluate the conduct of the parties as against the standards of ordinary practice." Here, however, the testimony does not concern only the customary practices in the insurance business. Instead, Mr. Hodges attempts to offer his opinion as to the legal standards which he contends control the case. See Sprecht, 853 F.2d at 810 (holding that "when the purpose of testimony is to direct the jury's understanding of the legal standards upon which their verdict must be based, the testimony cannot be allowed").

The Marx court noted succinctly that "we must be especially careful not to allow trials before juries to become battles of paid advocates posing as experts on the respective sides concerning matters of domestic law." Marx, 550 F.2d at 511. This concern was more fully explained by our circuit court in Sprecht:

> [T]estimony on ultimate issues of law by the legal expert is inadmissible because it is detrimental to the trial process. If one side is allowed the right to call an attorney to define and apply the law, one can reasonably expert the other side to do the same. Given the proclivity of our brothers and sisters at the bar, it can be expected that both legal experts will differ over the principles applicable to the case. The potential is great that jurors will be confused by these differing opinions, and that confusion may be compounded by different instructions given by the court.

853 F.2d at 809 (internal citations omitted).

Mr. Hodges' opinions about whether the defendant investigated the plaintiff's non-economic damages contain factual conclusions about which the jury will hear evidence and will be fully qualified to make its own determination. See Lone Star Steakhouse, 343 F. Supp. 2d at 1015. Mr. Hodges' interpretation of that evidence will not assist the jury.

Finally, I find that Mr. Hodges' characterization of American Family's computer program used to test the reasonableness of medical services as a "systematic hurdle" and as "incredibly confused and convoluted" is inflammatory and will not assist the trier of fact. His conjectural opinion--that American Family made "continual request[s] for additional information including the late need to have UB documentation, **probably** only for the purpose of feeding compatible information through American Family's ebill program" (emphasis added)-- also will not assist the jury. The jury will hear the evidence and will be fully qualified to make its own determination from the evidence presented. Id.

V.

IT IS ORDERED that the Motion to Exclude [Doc. # 93] is GRANTED.  Mr. Hodges may not testify to the challenged opinions.

Dated December 28, 2011.

                            BY THE COURT:

                             s/ Boyd N. Boland
                            United States Magistrate Judge