IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 11-CV-00789-CMA-BNB

NAN J. BAUMANN,

Plaintiff,
v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY

Defendant.

---

**DEFENDANT'S MOTION TO PRECLUDE PLAINTIFF'S EXPERT GARTH ALLEN'S OPINIONS**

---

Defendant America Family Mutual Insurance Company ("American Family"), by and through its attorneys, Lambdin & Chaney, LLP, hereby moves for an order precluding testimony or argument concerning the opinions of Plaintiff's expert, Garth Allen, as fully set forth herein. In support of its motion, American Family states as follows:

## CERTIFICATE OF COMPLIANCE

Pursuant to D.C.COLO.LCivR 7.1(A), counsel for American Family has conferred with counsel for Plaintiff regarding the subject matter of this Motion. Plaintiff's counsel advised that Plaintiff opposes the relief sought herein.

## INTRODUCTION AND BACKGROUND

This case arises out of Plaintiff's claim for underinsured motorist ("UIM") benefits pursuant to insurance policies issued by American Family following a pedestrian/motor

vehicle accident that occurred on February 5, 2010. In her Complaint, Plaintiff alleges, among other things, that American Family breached its duty of good faith and fair dealing as well as the provisions of C.R.S. §§ 10-3-1115 and 10-3-1116.

On or about September 7, 2011, Plaintiff served her expert disclosures pursuant to Fed.R.Civ.P. 26(a)(2). *See* Plaintiff's Expert Disclosures, attached hereto as **Exhibit A**. Therein, Plaintiff disclosed Richard M. Hodges as an expert expected to opine upon American Family's handling of Plaintiff's insurance claim and whether its claim handling activities comported with its legal duties as Plaintiff's insurer. Mr. Hodges' August 31, 2011 report is attached hereto as **Exhibit B**. On September 23, 2011, Plaintiff served her Supplemental Rule 26(a)(2) Expert Disclosures in which she disclosed a September 22, 2011 supplemental report prepared by Mr. Hodges. Plaintiff's Supplemental Rule 26(a)(2) Expert Disclosures and Mr. Hodges' September 22, 2011 supplemental report are attached hereto as **Exhibits C** and **Exhibit D**, respectively.

On December 6, 2011, American Family moved, pursuant to F.R.E. 702, to preclude various opinions rendered by Mr. Hodges. *See* Doc. 93, filed 12/6/11. The Court granted American Family's Motion on December 28, 2011. *See* Doc. 109, filed 12/28/11. Thereafter, however, because of Mr. Hodges' unfortunate and untimely passing, Plaintiff moved to substitute her expert and to supplement her expert disclosures. *See* Doc. 110, filed 12/29/11. Plaintiff explained that she had retained Professor Garth Allen as a substitute expert witness. In response to Plaintiff's Motion, American Family argued, among other things, that allowing Plaintiff to substitute her expert witness would, in effect, afford her a second bite at the apple with regard to her

expert disclosures. Given the looming trial date, American Family would then face unfair prejudice. *See* Doc. 113, filed 12/30/11. Nevertheless, on January 5, 2012, the Court granted Plaintiff's Motion to Substitute Expert and to Supplement Expert Disclosure. *See* Doc. 124, filed 1/5/12. However, cognizant of American Family's concerns of prejudice, the Court ordered an expedited disclosure schedule, requiring that Plaintiff submit an expert witness report no later than January 10, 2012. *See id.* at p. 5. Further, the Court noted that "Mr. Hodges' death should not be a windfall for Plaintiff. Thus, ***Professor Allen's opinion should not stray from the subject matter of Mr. Hodges' opinion***. To the extent that Professor Allen covers new material in his deposition, Defendant may file a motion to exclude that portion of Professor Allen's opinion." *Id*. at pp. 4-5 (emphasis added).

Thereafter, on January 10, 2012, Plaintiff served her Second Supplemental Rule 26(a)(2) Expert Disclosure and disclosed a January 10, 2012 report prepared by Professor Allen. Plaintiff's Second Supplemental Rule 26(a)(2) Expert Disclosure and Professor Allen's report are attached hereto as **Exhibit E** and **Exhibit F**, respectively. Despite the Court's clear admonitions in its January 5, 2012 Order and Professor Allen's admitted knowledge thereof, *see* **Exhibit F**, at p. 9, the opinions rendered by Professor Allen go well beyond the scope of opinions rendered by Mr. Hodges. Thus, American Family is entitled to an order precluding various opinions of Plaintiff's Expert, Garth Allen, in accordance with the Court's January 5, 2012 Order. Moreover, American Family is also entitled to an order precluding Professor Allen's opinions based upon F.R.E. 702.

## ARGUMENT AND LEGAL AUTHORITY

### A. Professor Allen's Opinions Regarding the Collateral Source Doctrine and Medicare

#### *1. Professor Allen's Opinions Regarding the Collateral Source Doctrine and Medicare are Beyond the Scope of the Opinions Rendered by Mr. Hodges*

In his report, Professor Allen renders various opinions regarding the appropriateness of American Family's conduct as it relates to its position regarding Medicare Part A benefits. Professor Allen's report provides, at great length, as follows:

> In order to properly evaluate medical bills adjuster are, in essence, estimating the final verdict against the at-fault motorist if the case had gone to trial. In order to properly estimate a final verdict the adjuster must have a basic understanding of the collateral source rule, among other factors. Most adjusters understand that the purpose of the collateral source rule is to keep the at-fault party from having his or her liability reduced by insurance coverages purchased by the injured person. Restated, the wrongdoer should not profit by having the damages reduced because the injury party was financially cautious and purchased insurance. Accordingly, insurance purchased by the insured directly from an insurer or indirectly through employer sponsored or governmental plans do not reduce the liability of the wrongdoer. Because Medicare Part A is purchased by the insured by paying 1.45 percent of earned income, a percent matched by the employer (arguably with the employee's money) for a total of 2.9%, Medicare Part A benefits are collateral and thus not allowed as a set off against damages. Part B of Medicare has a monthly premium and therefore abides by the same rule.
>
> Adjusters must also be aware of the fact that the damages awarded in personal injury suit include reasonable medical expenses whether or not the injured party is financially able to pay the bills. Situations do arise, through managed health care or Medicare, where the amount billed and the amount paid are not the same. In such situations, the insurance

> company must use good faith to determine reasonable medical charges. Most insurance companies, out of fairness as well as a concern regarding allegations of bad faith, do not have the temerity to reduce the amount billed, even if the total amount was not paid.

**Exhibit F**, at pp. 5-6. Professor Allen then goes on to opine that:

> American Family acted in a manner inconsistent with industry standards regarding valuation [of] Ms. Baumann's injuries. American Family's biggest mistake was using only the Medicare lien payoff plus $50,000 paid by Colorado Casualty as "countable" medical expenses. The lien payoff is, of course, negotiated and does not represent the amount billed or the amount paid by Medicare. Instead, it normally represents a portion of the amount paid by Medicare. In this case, according to Mr. Scipione's affidavit, the Medicare billings totaled $101,202.98, but the Medicare payment totaled only $19,532.40. The lien settlement of $11,191 noted above was only 57% of the Medicare payment. The reasonableness of the Medicare payments is an extended political debate not resolvable in this summary, but the fact it is often significantly below the billed amount and the amount paid by most injured persons who are not Medicare eligible, prompts reasonable insurers to consider the billed amount as the best indicator of reasonable medical expenses. ***American Family's use of the smallest possible number, the negotiated lien payoff, is far below industry standards and represents an unreasonable, irrational foundation, is self-serving, and constitutes an unfair practice. Because the non-economic damages are frequently driven by the medical expenses, minimizing medical expenses usually leads, and in this case led, to minimizing non-economic damages further compounding the impact of the unfair approach sanctioned by American Family.***

*Id.* at p. 6 (emphasis added). In addition, Professor Allen opines that American Family's valuation of Plaintiff's claim violated C.R.S. § 10-3-1104(1)(h)(I). *See id.* at pp. 6-7.

The lengthy opinions rendered by Professor Allen regarding the collateral source doctrine, Medicare, and American Family's valuation of Plaintiff's claim vastly exceed the scope of opinions rendered by Mr. Hodges. For his part, Mr. Hodges expressly testified during his deposition that the collateral source doctrine and its application to Medicare was ***not*** part of the opinions rendered in this case:

> **Q (By Ms. Ferris) – when you reviewed plaintiff's motion for partial summary judgment, you made that notation about no specific Colorado application to the collateral source statute to Medicare?**
>
> A That's right. And that's a note from the actual motion itself.
>
> **Q Okay. Did you do any research to determine whether there was any application of the collateral source statute to Medicare?**
>
> A No. I mean, certainly not in conjunction with this case. And I don't think I ever have, no.

Portions of Mr. Hodges' October 26, 2011 Deposition Transcript, attached as **Exhibit G**, at pp. 72:24-73:10.

By Mr. Hodges' own testimony, he never even considered the application of the collateral source doctrine to Medicare payments relevant to his report. Consistent therewith, in his August 31, 2011 report, Mr. Hodges makes only scant references to the collateral source issue in this case and does not render an opinion that American Family's position as to that issue constituted bad faith. *See* **Exhibit B**, at pp. 5, 6, 10. Indeed, Mr. Hodges' references to the collateral source issue in this case appear to be only a summary of the claims handling activities that occurred in this case. Similarly, in

his September 22, 2011 supplemental report, Mr. Hodges' opinions regarding the collateral source issue consist of a single sentence opining that American Family's position regarding Medicare Part A was "incorrect." **Exhibit D**, at p. 2. Unlike Professor Allen, Mr. Hodges did not render opinions regarding how American Family's valuation process—embodying its position regarding Medicare A—constitutes bad faith. As such, pursuant to the Court's January 5, 2012 Order, Professor Allen's opinions regarding the collateral source doctrine and its application to Medicare Part A must be precluded.

### *2. Professor Allen's Opinions Regarding the Collateral Source Doctrine and Medicare are inadmissible legal conclusions*

Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

However, an expert may not offer opinion on an ultimate issue of law. *See Specht v. Jensen*, 853 F.2d 805, 808-09 (10th Cir. 1988), *cert. denied* 488 U.S. 1008 (1989). In *Specht*, the Tenth Circuit Court of Appeals discussed the problems and dangers associated with allowing expert testimony regarding legal conclusions or ultimate issues

when addressing language contained in Rule 702. "While other experts may aid a jury by rendering opinion on ultimate issues, our system reserves to the trial judge the role of adjudicating the law for the benefit of the jury." *Specht*, 853 F.2d at 808-09. Permitting the expert to usurp this function manifests harm in two ways. *See id.* at 809. First, the jury may believe that the witness is more knowledgeable than the judge in a given area of law. *See id.* Thus, there is a substantial danger the jury will simply adopt the expert's conclusions rather than make its own decisions. *See id.* Second, testimony on the ultimate issue of law by an expert witness is detrimental to the trial process. In discussing the likelihood that, if experts were allowed to testify as to ultimate legal issues or conclusions, both sides would present legal experts with differing opinions, the court noted that the potential is great that jurors will be confused by these differing opinions and the confusion may be compounded by different instructions given by the court. *See id.*

Here, Professor Allen has been endorsed to testify as to the opinions contained in his expert reports. *See* **Exhibit E**, at p. 1. However, as described above, Professor Allen's report contains opinions on ultimate legal issues and legal conclusions. Specifically, Professor Allen opines as follows:

> Accordingly, insurance purchased by the insured directly from an insurer or indirectly through employer sponsored or governmental plans do not reduce the liability of the wrongdoer. Because Medicare Part A is purchased by the insured by paying 1.45 percent of earned income, a percent matched by the employer (arguably with the employee's money) for a total of 2.9%, Medicare Part A benefits are collateral and thus not allowed as a set off against damages.

> Part B of Medicare has a monthly premium and therefore abides by the same rule.

**Exhibit F**, at p. 6. Although Professor Allen couches his opinion in terms of an industry standard, i.e., stating that "[m]ost adjusters understand . . ." in actuality, Professor Allen renders legal conclusions about the applicability of the collateral source doctrine to payments made under Medicare Part A.

To that effect, it is telling that the Parties in this case have devoted substantial time and energy into briefing the very ***legal issue*** about which Professor Allen opines in their Cross Motions for Partial Summary Judgment. It is also telling that Plaintiff's previous expert, Mr. Hodges, conceded in his deposition that the legal issue presented in the partial summary judgment cross motions has yet to be decided as a matter of law in Colorado. Plaintiff now seeks to present opinion evidence from Professor Allen regarding the application of the collateral source doctrine to payments made under Medicare Part A. Because this type of testimony is inadmissible, Professor Allen's opinions must be stricken.

#### *3. Professor Allen's Opinion's Regarding the Collateral Source Doctrine and Medicare are Unreliable*

As made clear by F.R.E. 702, expert opinions are admissible only if the expert is qualified to offer the opinions presented and the opinion is sufficiently reliable. Admissible expert testimony must be grounded in "the methods and procedures of science rather than subjective belief or unsupported speculation." *Gallegos v. Swift & Co.*, 237 F.R.D. 633, 639 (D. Colo. 2006) (quoting *Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193, 1205 (10th Cir. 2002)).

Here it is apparent that Professor Allen's report that his opinions regarding the application of the collateral source doctrine to payments made under Medicare Part A are patently unreliable. Although Professor Allen describes, in the most general sense, his credentials and relevant experience at the beginning of his report, *see* **Exhibit F**, at p. 1, he provides no basis whatsoever for his opinions regarding the application of the collateral source doctrine to payments made under Medicare Part A. Professor Allen opines that "most adjusters understand that the purpose of the collateral source rule is to keep the at-fault party from having his or her liability reduced by insurance coverage purchased by the injured person." *Id.* at p. 6. However, he fails to explain the basis for that opinion, or any of the opinions quoted above. Moreover, Professor Allen does not identify a single legal authority as support for his proposition that American Family improperly applied the collateral course doctrine in its handling of Plaintiff's claim. Based on the foregoing, Professor Allen's opinions regarding the collateral source doctrine and Medicare are unreliable and must be stricken pursuant to F.R.E. 702.

## B. Professor Allen's Opinions Regarding the Industry Standard to Familiarize Adjusters with Basic Legal Rules Regarding Legal Liability and Damages.

### *1. Professor Allen's Opinions Regarding the Industry Standard to Familiarize Adjusters with Basic Legal Rules Regarding Legal Liability and Damages are Beyond the Scope of the Opinions Rendered by Mr. Hodges*

Apart from the opinions discussed above, Professor Allen opines that:

> Due to the fact that adjusters must be able to reasonably estimate bodily injury damages in order to fairly adjust UIM claims, the standard in the industry is to familiarize adjusters with basic legal rules regarding legal liability and damages. American Family's "Injury Evaluation and Settlement"

> document produced in discovery contains only the text portion of the online training course and not the audio component. However, the document does state that the adjuster must be familiar with the "injury itself" including the condition of the claimant before and after the accident. The training materials also list other important factors including but not limited to medical bills, walking aids, immobilization, inconvenience, and residuals.

*Id.* at p. 5. Professor Allen further opines that:

> The "Injury Evaluation and Settlement" materials note the importance of prompt medical authorization, the insured's condition before and after the accident, the requirement that claims be evaluated without the use of any electronic valuation tool. Ms. Pachl's request for UB92 forms seems inconsistent with this requirement, and also a request that should have gone to medical providers, if it was sent to anyone, instead of Ms. Baumann or her attorney.

*Id.* at p. 7. For his part, however, Mr. Hodges never refers to American Family's "Injury Evaluation and Settlement" Document and how American Family's conduct complied with that document, or discusses an industry standard to "familiarize adjusters with basic legal rules regarding legal liability and damages." *Id.* Via Professor Allen's report, Plaintiff is attempting to get a second bite at the apple and refine the expert opinions in support of her bad faith claim. This is precisely the windfall that the Court specifically addressed in its January 5, 2012 Order.

***2. Professor Allen's Opinions Regarding the Industry Standard to Familiarize Adjusters with Basic Legal Rules Regarding Legal Liability and Damages are the Type of Speculative Opinions Previously Stricken by the Court***

Following the language on page 5 of Professor Allen's report quoted in Section B.1. above, Professor Allen opines that:

> American Family did not gather information regarding Ms. Baumann's condition before and after the accident, and, to the degree it was provided in the settlement demand, paid little attention to the information and the claim file shows no evidence it was incorporated into the valuation in any way.

*Id.* at p. 5. In its December 28, 2011 Order, the Court excluded opinions from Mr. Hodges regarding whether American Family "investigated the plaintiff's non-economic damages." Doc. 109, at p. 10. The Court concluded that Mr. Hodges' opinions "contain factual conclusions about which the jury will hear evidence and will be fully qualified to make its own determination." *Id.* The opinions of Professor Allen are nothing more than the same speculative opinions of Mr. Hodges, repackaged in an effort to make an end run around the Court's December 28, 2011 ruling. As was the case with Mr. Hodges' opinion, Professor Allen's report is contradicted by the adjuster's deposition testimony. Ms. Pachl, the adjuster, testified that she evaluated Plaintiff's non-economic damages at $50,000 to $60,000. *See* Portions of Ms. Pachl's August 3, 2011 Deposition Transcript, attached as **Exhibit H**, at p. 114:4-21. Accordingly, Professor Allen's opinion must be stricken.

## CONCLUSION

For the reasons discussed herein, Professor Allen's opinions discussed in this Motion must be precluded because they exceed the scope of Mr. Hodges' opinions, do not comply with the requirements of F.R.E. 702, and are tantamount to the type of opinions previously excluded by this Court.

WHEREFORE, Defendant American Family Mutual Insurance Company respectfully requests that this Court enter an Order precluding testimony or argument regarding Plaintiff's expert Garth Allen's opinions in accordance with this Motion.

DATED this 16th day of January, 2012.

Respectfully submitted,

By: s/ *Michael G. Paul*

Martha C. Ferris, Esq.
Michael G. Paul, Esq.
**LAMBDIN & CHANEY, LLP**
4949 S. Syracuse Street, Suite 600
Denver, Colorado 80237
Telephone: (303) 799-8889
FAX: (303) 799-3700
E-mail: mferris@lclaw.net; mpaul@lclaw.net
Attorneys for American Family Mutual Ins. Co.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 11-cv-00789-CMA-BNB

NAN J. BAUMANN,

Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY
Defendant.

---

**CERTIFICATE OF SERVICE**

---

I hereby certify that on January 16, 2012, I electronically filed the foregoing **DEFENDANT'S MOTION TO PRECLUDE PLAINTIFF'S EXPERT GARTH ALLEN'S OPINIONS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

John Scipione, Esquire: jscipione@tmslawpc.com

John G. Taussig, III, Esquire: jt@tmslawpc.com

Jeremy A. Sitcoff, Esquire: jas@robertslevin.com

Marixa Frias, Esquire: mdf@robertslevin.com

By: s/ *Michael G. Paul*

Martha C. Ferris, Esq.
Michael G. Paul, Esq.
**LAMBDIN & CHANEY, LLP**
4949 S. Syracuse Street, Suite 600
Denver, Colorado 80237
Telephone: (303) 799-8889
FAX: (303) 799-3700
E-mail: mferris@lclaw.net; mpaul@lclaw.net
Attorney for American Family Mutual Ins. Co.