## GARTH H. ALLEN

9088 Golden Fields Lane
Loveland, Colorado  80538

Phone: 970-351-1234
Fax: 970-351-1097

January 10, 2012

Mr. Jeremy A. Sitcoff, Esq.
Roberts Levin Rosenberg, PC
1660 Wynkoop, Suite 800
Denver, Colorado 80202

RE: *Baumann v. American Family Insurance Company,* United States District Court for
the District of Colorado

Dear Mr. Sitcoff:

This letter is in response to your request for a FRCP 26(a)(2)(B) report summarizing my opinions as an expert witness/consultant and their bases for your use in the above captioned case.  My qualifications and publications are contained in my attached curriculum vita.  Also attached hereto is my expert testimony listing for the preceding four years.

In addition to the credentials contained in my Vitae, I am the Executive Director of the Colorado Insurance Education Foundation and in that capacity regularly teach seminars and workshops for insurance professionals.  My educational background, professional activities as a full-time faculty member at the University of Northern Colorado teaching courses in insurance in the College of Business Administration, professional activities teaching seminars and workshops to insurance professionals, and consultations with insurers as well as insureds, have enabled me to become familiar with automobile insurance policies, its coverages and claim practices, customs, and procedures, including insurance industry practices regarding property insurance claims.  I have qualified as an expert witness in the area of insurance in state and federal courts in Colorado on many occasions.  I am also an attorney licensed to practice law in the State of Colorado.

My fee for services as an expert witness is $250 per hour plus expenses.

In preparation for this opinion I have reviewed the documents listed in the attached index of documents reviewed.

## Factual Background

On February 5, 2010, Plaintiff Nan J. Baumann, who at the time was eighty-nine years old, was severely injured when she was struck by a vehicle crossing the street.  In the accident, Ms. Baumann sustained serious injuries to her head and left leg.  She was

# EXHIBIT F

Mr. Jeremy A. Sitcoff, Esq.
January 10, 2012
Page 2

taken by ambulance to St. Anthony's Hospital Central where she underwent external fixation and follow-up surgery on her left leg. Ms. Baumann spent almost four months confined either to a hospital bed or in a rehabilitation facility recovering from her injuries. Thereafter, Ms. Baumann underwent an additional three months of in-home rehabilitation with a physical therapist, occupational therapist, and a licensed practical nurse.

Elise Henderson, the driver of the vehicle that ran over Ms. Baumann, was insured under an automobile liability insurance issued by State Farm Mutual Insurance Company ("State Farm"), with liability limits of only $50,000 per person. Within two months of the accident, State Farm offered to pay Henderson's policy limits to Ms. Baumann in settlement of her claims against Henderson. State Farm tendered its $50,000 in policy limits on July 22, 2010. Ms. Baumann was insured under an automobile liability insurance policy issued by Colorado Casualty Insurance Company ("Colorado Casualty") with uninsured/underinsured motorist ("UM/UIM") coverage of $50,000. Shortly after submitting a UIM claim, Colorado Casualty agreed to pay Ms. Baumann the $50,000 limits of her UI/UIM coverage and tendered that amount shortly after September 14, 2010. The Colorado Casualty policy also contained Medical Payment benefits in the amount of $50,000 providing coverage for medical expenses resulting from an automobile accident. Colorado Casualty paid policy limits of $50,000 for a portion of Ms. Baumann's medical expenses.

At the time of the accident, Ms. Baumann was living with her niece, Donna Jack, and was therefore a class one insured under two automobile policies issued by Defendant American Family Mutual Insurance Company ("Defendant" or "American Family") to Ms. Jack and Peggy Richardson as Policyholders/Named Insureds. Each American Family policy provided UM/UIM benefits of $100,000 per person. On or about October 13, 2010 and November 10, 2010, Ms. Baumann, through her attorney, Mr. John E. Scipione, Esq., requested that Defendant timely evaluate her claim and pay all available UIM benefits for the serious injuries and losses sustained in the accident. In support of her request, Ms. Baumann provided Defendant with a CD containing all medical bills and records available to her that supported her claim for benefits. Mr. Scipione also provided a summary of medical bills totaling $208,300 for medical care and treatment. Defendant delayed its evaluation of Ms. Baumann's claim by requesting additional medical information that would not substantially effect a fair evaluation of the claim.

American Family's adjuster, Sue Ann Pachl, took a recorded statement of Ms. Jack to confirm Ms. Baumann's resident relative status necessary for coverage and took photos of the residence. The recorded statement, however, focused almost exclusively on Ms. Baumann's living arrangements and resident relative status. No questions were asked regarding Ms. Baumann's condition before and after the accident.

Mr. Scipione faxed Ms. Pachl the medical payments log from Colorado Casualty showing payment of $50,000 in medical expenses and confirmation of Medicare Part B

Mr. Jeremy A. Sitcoff, Esq.
January 10, 2012
Page 3

charges in the amount of $34,117. Ms. Pachl did a review on November 7, 2010 for reserve purposes using a Comprehensive Investigation Report (CIR) and estimated a BI value for non-economic damages of $50,000 to $60,000 and medical expenses of $97,252. Ms. Pachl testified that she had trouble reading the MSPRC printout and noted in the claim file, "I don't see the ER bills on this list, . . ." Despite the entry and without explanation, Ms. Pachl further notes that she combined, "Medicare ER and surgery payments: 21,411.30 with additional payments of 10,843.03 =$32,254.33." Ms. Pachl expected more bills so she estimated another $15,000 in medical expenses and added $50,000 in bills paid by Colorado Casualty to arrive at medical costs of $97,254.33. Accordingly, Ms. Pachl first valued Ms. Baumann's total damages as $147,254 to $157,354.

On February 1, 2011, Ms Pachl updated the CIR with records received from Mr. Scipione. Mr. Scipione had also sent, on January 17, 2011, confirmation of the release of the Medicare lien for the sum of $11,190.73. She revised medical expenses to $61,190.73 consisting of the Colorado Casualty medical payments of $50,000 and the amount of the amount paid to negotiate the Medicare lien. She next combined the $61,190.73 with a non-economic (BI) estimate $60,000 to $70,000 for a total value of $121,191 to $131,191. Ms. Pachl estimated damages for settlement purposes, at $122,000 to $132, 000.

On February 25, 2011, American Family finally responded to Ms. Baumann's October 13, 2010 and November 10, 2010 requests for policy limits. Ms. Pachl used her valuation of economic and non-economic damages at $122,000 to $132,000, deducted the $100,000 recovered from State Farm and Colorado Casualty, and offered $22,000 in full and final settlement of Ms. Baumann's UIM claim.

This lawsuit ensued and Plaintiff brought claims against Defendant for breach of contract, bad faith breach of contract, and for violations of C.R.S. § 10-3-1115(1)(a) and C.R.S. § 10-3-1116(1), for unreasonably delaying and denying her request for payment of her UIM benefits. In addition to seeking both economic damage and non-economic damages, Ms. Baumann is also seeking recovery of punitive damages alleging Defendant's conduct is attended by circumstances of fraud, malice, or willful and wanton conduct.

## Insurance standards

Insurance standards, practices, procedures and customs can be identified by considering laws; claims manuals; books and treatises; insurance company claim manuals; and by observing what insurance companies actually do to adjust the claim. Insurance companies look to insurance related regulations, statutes, and case law to determine reasonable and proper conduct in general and in a particular state. Accordingly, references herein to regulations, statutes and case law are not intended to

Mr. Jeremy A. Sitcoff, Esq.
January 10, 2012
Page 4

instruct regarding the law but rather are intended as a statement of the basis for an assertion of an insurance standard. I have also been fortunate enough to review, in a forensic capacity, the claim manuals of many companies providing uninsured and underinsured motorist coverage as well as other automobile-related insurance coverages. I can, accordingly, identify common standards and procedures for adjusting claims in Colorado. I have also spent over 35 years teaching seminars and workshops to insurance professionals. Through the interaction of such engagements, I am able identify common practices actually applied to underinsured motorist insurance (UIM) claims and auto-related claims in general.

Since 1913, the Colorado General Assembly has mandated that all insurance carriers must be "actuated by good faith in everything pertaining to insurance." C.R.S. § 10-1-101.

An insurance company's duties of good faith and fair dealing arise from the special nature of insurance (to provide financial and emotional security against calamity) and the special relationship between the insurance company (superior in economic power and having control over decision to provide benefits) and insured. The duty of good faith and fair dealing is a non-delegable duty. The duty of good faith and fair dealing imposes upon the insurance company duties to, among other things, investigate and adjust a claim in good faith, and not to make a deliberate decision to avoid paying a claim where there is evidence of coverage.

The insurance company's duty to act in good faith is not limited to the failure to provide policy benefits, but permeates the entire relationship between the insurer and insured. An insurance company owes a duty to the insured to adjust a claim in good faith.

In the 1950's, insurance companies, in cooperation with the National Association of Insurance Commissioners, drafted a Model Unfair Claim Settlement Practices Act ("UCSPA") and Insurance Commissioners recommended it for enactment in their respective states. Almost every state, including Colorado, passed the model act or a slightly modified version of the model act. Because the UCSPA has widespread acceptance, and because it was and is supported by the insurance industry, the rules contained in the Act are considered minimum insurance industry standards. The UCSPA is also useful in assessing the reasonableness or unreasonableness of an insurance company's conduct.

Although the reasonableness of an insurer's decision and the issue of whether or not the insurer acted in bad faith are normally evaluated at the time the claim is denied or functionally denied by making an unreasonably low offer of settlement, the duty of bad faith is continuous and is not suspended by litigation.

Because insurance is a regulated and somewhat litigious industry, there is

Mr. Jeremy A. Sitcoff, Esq.
January 10, 2012
Page 5

substantial overlap between industry standards and rules found in statutes, regulations, and cases. In the remainder of this report, I will, from time to time, refer to Colorado laws. I do that, however, not to instruct on the law[1] but rather to identify the basis for particular insurance standards asserted herein and note their particular application in Colorado.

## Opinions and conclusions

You asked for my opinion regarding the reasonableness American Family in adjusting this claim. I compared American Family's conduct to the standards, customs, and practices in the insurance industry informed by my formal education and more than 35 years of working with the insurance industry in an educational or forensic capacity. American Family's conduct was unreasonable, in violation of several minimum standards, in violation of American Family's own claims procedures, and also meets the test for first-party bad faith in Colorado.

The fundamental purpose of underinsured motorist coverage (UIM coverage), according to the provisions of personal lines and commercial auto insurance policies as well as the Colorado Uninsured Motorist Statute, CRS § 10-4-609, is to put the injured party in as good condition as they would have been in if the at-fault motorist carried limits of insurance equal to the liability insurance purchased by the at-fault motorist plus all available and "stacked" UIM limits. The American Family UM/UIM coverage states on page 2 of 9, "We will pay compensatory damages for bodily injury which an insured person is legally entitled to recover from the owner of an uninsured motor vehicle or an underinsured motor vehicle." An underinsured motor vehicle is defined as a vehicle with bodily injury liability limits that are not enough to pay "the full amount the insured person is legally entitled to recover as damages."

Due to the fact that adjusters must be able to reasonably estimate bodily injury damages in order to fairly adjust UIM claims, the standard in the industry is to familiarize adjusters with basic legal rules regarding legal liability and damages. American Family's "Injury Evaluation and Settlement" document produced in discovery contains only the text portion of the online training course and not the audio component. However, the document does state that the adjuster must be familiar with the "injury itself" including the condition of the claimant before and after the accident. The training materials also list other important factors including but not limited to medical bills, walking aids, immobilization, inconvenience, and residuals. American Family did not gather information regarding Ms. Baumann's condition before and after the accident, and, to the degree it was provided in the settlement demand, paid little attention to the information and the claim file shows no evidence it was incorporated into the valuation in any way.

In order to properly evaluate medical bills adjusters are, in essence, estimating the

---

[1] I realize that questions of law are for the court to determine, and the lawyers have submitted several legal issues to the court for determination.

Mr. Jeremy A. Sitcoff, Esq.
January 10, 2012
Page 6

final verdict against the at-fault motorist if the case had gone to trial. In order to properly estimate a final verdict the adjuster must have a basic understanding of the collateral source rule, among other factors. Most adjusters understand that the purpose of the collateral source rule is to keep the at-fault party from having his or her liability reduced by insurance coverages purchased by the injured person. Restated, the wrongdoer should not profit by having the damages reduced because the injury party was financially cautious and purchased insurance. Accordingly, insurance purchased by the insured directly from an insurer or indirectly through employer sponsored or governmental plans do not reduce the liability of the wrongdoer. Because Medicare Part A is purchased by the insured by paying 1.45 percent of earned income, a percent matched by the employer (arguably with the employee's money) for a total of 2.9%, Medicare Part A benefits are collateral and thus not allowed as a set off against damages. Part B of Medicare has a monthly premium and therefore abides by the same rule.

Adjusters must also be aware of the fact that the damages awarded in personal injury suit include reasonable medical expenses whether or not the injured party is financially able to pay the bills. Situations do arise, through managed health care or Medicare, where the amount billed and the amount paid are not the same. In such situations, the insurance company must use good faith to determine reasonable medical charges. Most insurance companies, out of fairness as well as a concern regarding allegations of bad faith, do not have the temerity to reduce the amount billed, even if the total amount was not paid.

American Family acted in manner inconsistent with industry standards regarding valuation Ms. Baumann's injuries. American Family's biggest mistake was using only the Medicare lien payoff plus $50,000 paid by Colorado Casualty as "countable" medical expenses. The lien payoff is, of course, negotiated and does not represent the amount billed or the amount paid by Medicare. Instead it normally represents a portion of the amount paid by Medicare. In this case, according to Mr. Scipione's affidavit, the Medicare billings totaled $101,202.98, but the Medicare payment totaled only $19,532.40. The lien settlement of $11,191 noted above was only 57% of the Medicare payment. The reasonableness of the Medicare payments is an extended political debate not resolvable in this summary, but the fact it is often significantly below the billed amount and the amount paid by most injured persons who are not Medicare eligible, prompts reasonable insurers to consider the billed amount as the best indicator of reasonable medical expenses. American Family's use of the smallest possible number, the negotiated lien payoff, is far below industry standards and represents an unreasonable, irrational foundation, is self-serving, and constitutes an unfair practice. Because the non-economic damages are frequently driven by the medical expenses, minimizing medical expenses usually leads, and in this case led, to minimizing non-economic damages further compounding the impact of the unfair approach sanctioned by American Family.

American Family misrepresented the benefits, advantages, conditions or terms of its

Mr. Jeremy A. Sitcoff, Esq.
January 10, 2012
Page 7

insurance policy in violation of CRS § 10-3-1104(1)(h)(I) by failing to use a reasonable basis for calculating the value of Ms. Baumann's bodily injury claim. American Family's consideration of only medical expenses paid by Ms. Baumann or her insurer is unsupported by any policy provision or industry practice and is therefore a misrepresentation of policy provisions and relevant facts.

American Family also failed to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies as required by subsection (1)(h)(III) of the UCSPA. American Family adopted some standards as evidence in the course outlines but failed to implement those standards in this claim. American Family also allowed an irrational approach to valuation to survive supervisory and roundtable review further evidencing a lack of reasonable standards.

Ms. Jaimie Rudolph, Ms. Pachl's manager and supervisor, noted in her deposition that American Family never questioned that the treatment Ms. Baumann received was related to the accident. She further acknowledged that the medical records Mr. Scipione provided were very detailed, and American Family owed benefits. The only issue was the amount, but she did note that Ms. Baumann's injuries in the accident were "significant injuries that required surgery and required extensive rehab" and that she agreed the driver in the accident was 100% liable. Ms. Rudolph stated that she did not go through the bills and cross reference the medical bills and records that Mr. Scipione provided. She also noted that Ms. Pachl incorrectly used the figure of $11,000 paid to resolve Ms. Baumann's Medicare lien in calculating the amount of Ms. Baumann's medical bills. She also stated that late reporting of the claim was not an issue.

It appears based on the deposition testimony and documents reviewed that American Family does not have a claim manual. However, American Family did produce material containing information regarding "Good Faith Claim Handling" and "Injury Evaluation and Settlement." The good faith claim handling materials adopt the UCSPA as a minimum standard and the principles contained therein including timely and thorough investigations and fair conduct.

The "Injury Evaluation and Settlement" materials note the importance of prompt medical authorization, the insured's condition before and after the accident, the requirement that claims be evaluated without the use of any electronic valuation tool. Ms. Pachl's request for UB92 forms seems inconsistent with this requirement, and also a request that should have gone to medical providers, if it was sent to anyone, instead of Ms. Baumann or her attorney.

American Family acted in contravention of UCSPA subsection (1)(h)(IV) by refusing to pay claim (here, the denial was functional in nature by offering only a very low amount unsupported by any accepted process or method) without conducting a reasonable investigation based upon all available information. American Family did not ask Ms. Jack

Mr. Jeremy A. Sitcoff, Esq.
January 10, 2012
Page 8

or Ms. Baumann about her condition before and after the accident, interpreted medical findings, such as health improvement and pain reductions, in a method most beneficial to American Family. As noted above, the value attached to the medical bills, the amount of the Medicare lien plus $50,000, was a method absolutely bereft of logic or support in any industry standard.

American Family also failed to adjust this claim in a manner consistent with the minimum standard requirements of UCSPA subsection (1)(h)(VI) by failing to effectuate prompt, fair, and equitable settlements of claims in which liability is reasonably clear. American Family's adjuster and manager, Ms. Pachl and Ms. Rudolph, both testified that liability was not an issue in this case; the only issue was compensatory damages. For all the reasons noted above, especially the deviant and substandard method of considering only a portion of the medical billings, American Family failed to effectuate a prompt, fair, and equitable settlement once liability was reasonably clear.

American Family's unreasonably low offer of $22,000 representing a claim valuation of $122,000, in the face of four months of hospitalization and rehabilitation at a rehabilitation facility, loss of precious time for an elderly person, substantial inconvenience, scarring, pain, and medical billings over $200,000, defies explanation, is based on an irrational methodology, and is absolutely unsupported by any standard in the insurance industry or American Family's own standards and noted in training materials.

Contrary to UCSPA subsection (1)(h)(XIV), American Family failed to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for functional denial of this claim or for the offer of a compromise settlement. It failed because no reasonable explanation exists. For all the reasons explained above, American Family's coverage investigation, evaluation, and functional denial by making only a meager offer did not meet insurance industry standards of care and were thus unreasonable.

In analyzing coverage, American Family must apply the Equal Consideration Doctrine whereby the rights and interests of the insured are given at least as much consideration as the insurer gives to its own financial objectives. American Family's decisions evidence a failure to apply the Equal Consideration Doctrine thus resulting in unreasonable conduct.

**Bad Faith**

American Family's conduct also meets the test for insurer bad faith conduct in Colorado. C.R.S. § 10-3-1113(3) states, "Under a policy of first party insurance, the determination as to whether an insurer's delay or denial was reasonable shall be based on whether the insurer knew its delay or denial was unreasonable or whether the insurer recklessly disregarded the fact that its delay or denial was unreasonable."

Mr. Jeremy A. Sitcoff, Esq.
January 10, 2012
Page 9

American Family knew or should have known that its failure to properly adjust and value the UIM claim was unreasonable.    American Family's conduct, according to the documents and deposition testimony of employees, shows no evidence of simple error or oversight but was rather intentional and purposeful and represents a reckless disregard of the rights and interests of Ms. Baumann.    To the degree some errors exist, American Family had many opportunities to correct errors through supervisory or group review. American Family did not use the review to correct its deficient conduct but rather steadfastly maintained its unreasonable position.

American Family's unreasonable conduct, occurring as it did after the effective date of C.R.S. §§ 10-3-1115 and -1116, is also governed by the prohibitions and remedies contained therein.

In summary, as outlined above American Family engaged in multiple violations of insurance industry standards to the detriment of Ms. Baumann.    American Family's substandard investigation, evaluation, and analysis of the claim in relation to the coverage provided led to the unreasonable failure to make any settlement offer within a range of reasonableness.    The conduct was unreasonable, violated insurance industry standards, constituted bad faith insurer conduct, and the degree of departure from principles governing decision-making reasonable UIM offers of settlement suggests a willful and callous disregard of the rights of its insured, Ms. Bauman, to whom American Family owed duties outlined above.

In preparation for this report, I did read the opinions of Mr. Seaman and Mr. Hodges.    I am also aware of the court's rulings regarding portions of Mr. Hodges' testimony.    In this report, I tried not to go beyond the scope of Mr. Hodges' report or re-test the court's rulings on allowed testimony.    I did not, for example, opine on paying an "agreed amount."    I did include some reference to the collateral source rule, but not in any attempt to invade the province of the court.    I did so only to note an industry standard and to make my opinions regarding the failure to make any reasonable offer of settlement as clear as possible.

Sincerely,

Garth H. Allen, J.D., C.P.C.U.

Documents provided to and reviewed by Garth H. Allen
in Baumann v. American Family

1.  Demand for Underinsured Motorist Benefits – October 13, 2010 (AMFAM
    1237-1247).

2.  Injury Evaluation and Settlement   (AF RFP 2557-2592).

3.  Good Faith Claim Handling   (AF RFP 2967-3007).

4.  AMFAM Training Materials   (AF RFP 7894-7895).

5.  AMFAM Casualty Investigation Report – November 17, 2010   (AMFAM
    1216-1218).

6.  AMFAM BI Settlement Report and Dissection Sheet (AMFAM 0162-0163).

7.  Amended Demand for UIM Benefits   (AMFAM 1248-1254).

8.  November 12, 2010 Correspondence from Sue A. Pachl to John E.
    Scipione   (AMFAM 1656-1657).

9.  January 17, 2011 Correspondence to Sue A. Pachl from Shawn Smith
    (AMFAM 1262-1264).

10. AMFAM Casualty Investigation Report – November 17, 2010   (AMFAM
    1219-1221).

11. October 26, 2010 Correspondence from John E. Scipione to Sue A.
    Pachl   (AMFAM 0121-0127).

12. February 15, 2011 Correspondence from John E. Scipione to Sue A.
    Pachl   (AMFAM 1256-1260).

13. February 16, 2011 email string between John E. Scipione and Sue A.
    Pachl   (AMFAM 1270-1271).

14. AMFAM Treatment Calendar (AMFAM 0164-0166).

15. Integrated Claim System Form – Activity Record (AMFAM 1671-1697).

16. February 14, 2011 Correspondence from Shawn Smith to Sue A.
    Pachl   (AMFAM 1272-1278).

17. February 25, 2011 Correspondence from Sue A. Pachl to John E.
    Scipione   (AMFAM 1660-1663).

18. Defendant's Responses to Plaintiff's First Set of Written Discovery.

19. February 21, 2011 email string between Jamie Rudolph, Sue A. Pachl and
    AMFAM legal and claims department   (AMFAM 1698-1703).

20. *Overton v. United States*, 619 F. 2d 1299 (8th Cir. 1980)   (AMFAM 1704-
    1717).

21.   American Family Claim Notes (unredacted)   (AMFAM 0001-0010).

22.   McDowell v. Bednarek, 03-D-2494-CBS (D. Colo. April 29, 2005)

23.   Deposition of Amelia Klemme

24.   Deposition of Sue Ann Pachl

25.   Deposition of Jaimie Rudolph

26.   Plaintiff's Motion/Response/Reply Partial Summary Judgment and/or Motion to Strike Defendant's Affirmative Defense Regarding Collateral Source Doctrine.

27.   Defendant American Family Mutual Insurance Co., Cross Motion/Response/Reply for Determination of Matter of Law and Motion for Partial Summary Judgment.

28.   September 7, 2011 Expert Report of Tom Seaman.

29.   October 7, 2011 Rebuttal Expert Report of Tom Seaman.

30.   Deposition Exhibits from Sue Pachl's Deposition

31.   Casualty Investigation Reports

32.   John Scipione Affidavit (Exhibit 1 to Plaintiff's Partial Motion for Summary Judgment).

33.   Order Granting Defendant's Motion to Preclude R. Hodges Opinions

34.   R. Hodges Report 8/31/11

35.   R. Hodges Report 9/22/11

36.   American Family disclosure documents (AMFAM00001-001717)

(AF RFP0001-7986).

37.   Nan Baumann disclosure documents (BAUMANN000001-002118).

VITAE

NAME:        Allen, Garth H.                          DATE: January, 2012

POSITION:    Director, School of Finance
             Kenneth W. Monfort College of Business
             University of Northern Colorado
             Greeley, CO  80639

             and

             Associate Professor
             School of Finance
             Kenneth W. Monfort College of Business
             University of Northern Colorado
             Greeley, CO  80639

HOME ADDRESS: 9088 Golden Fields Lane
              Loveland, CO 80538

TELEPHONE:   Office: (970)351-1234
               Home: (970)353-6918

EDUCATION:

| Year(s) | Degree | Institution | Area of Study |
|---|---|---|---|
| 1973 | J.D. | University of Iowa | Law |
| 1972-1973 | None | University of Iowa | Graduate studies in Insurance (jointly with the Law program.) |
| 1970 | B.B.A. | University of Iowa | Finance & Insurance |

WORK EXPERIENCE:

| Years | Organization | Position | Responsibility |
|---|---|---|---|
| **2007-Present** | **University of Northern Colorado** | **Director, School of Finance; Associate Professor** | **Administration, Teaching, Advising, Research** |
| 2006-2007 | University of Northern Colorado | Associate Professor, Department of Finance | Teaching, Advising, Research |
| 1998-2006 | University of Northern Colorado | Associate Professor, Chairman, Department of Finance | Administration, Teaching, Advising Research |
| August, 1987-1998 | University of Northern Colorado | Associate Professor, Department of Finance | Teaching, Advising, Research |
| Mar-Aug, 1987 | University of Northern Colorado | Acting Dean, College of Business | Administration |

| 1985-1989 | University of Northern Colorado | Associate Professor, Chairman, Department of Finance | Administration, Teaching, Advising, Research |
| 1981-1984 | University of Northern Colorado | Associate Professor | Teaching, Advising, Research |
| 1979-1981 | University of Northern Colorado | Chairman, Department of Finance and Associate Professor | Administration, Teaching, Advising, Research |
| 1977-1979 | University of Northern Colorado | Associate Professor | Teaching, Advising, Research |
| 1973-1976 | University of Northern Colorado | Assistant Professor | Teaching, Advising, Research |
| 1973 (3 months) | Linn County, Iowa | Intern Attorney | Practiced Law |
| 1971-1973 | University of Iowa | Teaching Assistant | Taught Introduction to Insurance |
| 1973-Present | Colorado Insurance Education Foundation | Executive Director | Teach pre-license and continuing education courses for insurance professionals and direct Foundation activities |

AREAS OF SPECIALIZATION:

Insurance, Risk Management, and Law

PUBLICATIONS:

"Tax Issues for Homeowner Associations," co-authored with C. de la Torre and R. Newmark, <u>The Colorado Lawyer</u>, January 2003, Vol. 32, No. 1, pp. 71-78.

"Consumer Satisfaction with Life Insurance: A Benchmarking Survey," co-authored with G. Kuhlemeyer, <u>Financial Counseling and Planning</u>, 1999, Vol. 10, No. 2, pp. 35-47

"Insurance: Bad faith and related topics," <u>Professional Education Systems Inc.</u>, 1999.

"Come Rain or Come Shine," co-authored with M. Renninger, <u>Financial Planning,</u> April, 1998.

"Stacking Uninsured Motorist Coverages," co-authored with David Berardinelli, <u>New Mexico Trial Lawyers Journal</u>, XXIV, (7), July-August 1996.

"Student-Managed Investment Funds: A Comparison of Alternative

Decision-Making Environments," co-authored with Dave Johnson and Joe Alexander, <u>Financial Practice And Education</u>, Spring 1996.

"First Party Bad Faith Litigation," <u>Am Jur Trials</u>, Volume 45, 1992.

"Potential Liability of Directors and Officers:  The Consequence of Decision Making," co-authored with Glen Droegemueller, <u>Journal of Rehabilitation Administration</u>, February, 1991.

PROFESSIONAL PRESENTATIONS:

"The Colorado Common Interest Ownership Act: Enforcement Differences between CC&Rs and Bylaws," with C. de la Torre and R. Newmark.  Rocky Mountain Academy of Legal Studies in Business, Vail, Colorado, September 2002.

"Tax Issues for Homeowners Association," with C. de la Torre and R. Newmark.  Rocky Mountain Academy of Legal Studies in Business, Vail, Colorado, September 2002.

"Disability Insurance and Bad Faith in Colorado," with M. Beaver, B. Levin, and C. Surrano.  Lorman Education Services, Denver, Colorado, June 2002.

"CAARA after Twenty-five Years: Problems and solutions," Larimar County Insurers, Fort Collins, Colorado, April 2002.

"Insurance Scholarships, Benefits, Procedures, and Implementation," Independent Insurance Agents of Denver, Denver, Colorado, October 2001.

"Insurance Issues in the 21st Century," Larimar County Insurers, Fort Collins, Colorado, April 2001.

"Risk Management and Fund Raising," Risk and Insurance Management Society, Denver Colorado, August 2000.

"Employment Related Liability and Insurance Coverage," Professional Insurance Agents of Denver, Denver, Colorado, October 1999.

"Colorado Legislative Highlights," Colorado Council of NAIW, Fort Collins, Colorado, September 1999.

"Insurance: Bad Faith and Related Topics." Professional Education Systems, Inc., 1999

"Applying Risk Management to Errors and Omissions Exposures," Professional Independent Insurance Agents of Colorado, Denver, Colorado, December 1998.

"Long Distance Education: A System of Delivery...is it a Competitive Edge?," with Ron Reed and R. Vish Iyer.  Decision Sciences Institute, Las Vegas, Nevada, November 1998.

"Commercial Insurance Problem Areas," Independent Agents of Denver, Denver, Colorado, September, 1998.

"Customer Satisfaction of Personal Life Insurance, Their Agent and the Company," with G. Kuhlemeyer.  Academy of Financial Services, Chicago, Illinois, 1998.

"Colorado Insurance Bad Faith Law and Practice." Presented for Professional Education Systems Inc., Denver, Colorado, 1997.

"Insurance Law for Agents," Lorman Education Services, Denver, Colorado, 1997.

"Commercial General Liability Exposures and Coverage Analysis," Independent Insurance Agents of Denver, Denver, Colorado, 1997.

"Insurance Law for Agents," Lorman Education Services, Denver, Colorado, 1997.

"Twenty-five Common Broker Errors," Independent Insurance Agents of Wisconsin, Madison, Wisconsin, March 1996.

"Twenty-four Hour Coverage," Professional Insurance Agents of Colorado Legislative Day, February, 1996

"Stacking Uninsured Motorist Coverages in Commercial Auto Policies," with D. Berardinelli. Presented at the Western Trial Lawyers Association, Las Vegas, Nevada, 1996.

"Personal and Commercial Liability Coverages," Independent Insurance Agents of Wyoming Convention, Laramie, Wyoming, 1996.

"Business Ethics in a Sales Environment," presentation for The North Dakota Auto Dealers Association, November, 1995.

"Casualty and Liability Insurance Review," presentation for Independent Insurance Agents of Omaha, Nebraska, August, 1995.

"Complex Ethical Issues for Independent Agents," presentation for Professional Independent Insurance Agents of Colorado, summer conference, June, 1995.

"Agent's Errors and Omissions Loss Prevention," presentation for The Insurance Women of Casper, Casper, Wyoming, May, 1995.

"The New Insurance Producer Licensing Laws," presentation for Professional Independent Insurance Agents of Larimer County, Fort Collins, Colorado, March, 1995.

"The Property and Casualty Insurance Wheel of Fortune," presentation for Professional Independent Insurance Agents of Colorado, Colorado Springs, CO, October, 1994.

"Environmental Exposure, Analysis, Risk Reduction, and Insurance," presentation for Independent Insurance Agents of Iowa, August, 1994.

"Complex Casualty Insurance Coverages and Legal Exposures," presentation for Independent Insurance Agents of Wyoming, Summer Conference, June, 1994.

"Sexual Harassment Liability Update, Loss Prevention, and Insurability," presentation for Iowa-Wisconsin Insurance Agents, Winter Getaway Conference, Phoenix, AZ, February, 1994.

"PERA Benefit Analysis and Estate Planning," presentation for retirement seminar at the University of Northern Colorado, February,

5

1993.

"Property and Casualty Insurance, Legal and Ethical Issues," Independent Insurance Agents of Iowa, December, 1992

"Technical Insurance Issues in Casualty Insurance," presentation for the Insurance Women of Wyoming, Casper, Wyoming, July 19, 1991.

"Advanced Commercial Liability Insurance Problems," presentation for the Independent Insurance Agents of Wyoming at the Annual Convention for the State of Wyoming, Jackson Hole, Wyoming, June 21, 1991.

"The Fundamentals of Ethics," presentation for the Independent Insurance Agents of South Dakota at the Statewide Annual Convention, Pierre, South Dakota, May 22, 1991.

"Commercial Coverage, Auto and Garage," presentation for Independent Insurance Agents of Colorado, Denver, Colorado, April 24, 1991.

"Property and Casualty Insurance Procedures," presentation for Farmers Insurance Company, Greeley, Colorado, March 6, 1991.

"Preventing Professional Liability Lawsuits," presentation for the Insurance Women of Casper, Casper, Wyoming, January 9, 1991.

"Comprehensive General Liabilities Under the New Commercial Package Policy," Independent Insurance Agents of Colorado, November 12, 1990.

"Advanced Problems for Construction Accounts," National Association of Surety Bond Producers, New Orleans, Louisiana, October 31, 1990.

"Insurance in the 1990's," invited submission to Continuing Legal Education in Colorado, Inc., published in Insurance in the '90's, C.L.E., Inc., October, 1990.

"Commercial Auto Coverages Under the Commercial Package Policy," Independent Insurance Agents of Colorado, September 13, 1990.

"Situational Ethics in an Insurance Marketing Environment," Iowa Young Agents Convention, Okaboji, Iowa, June 21, 1990.

"Ethics and Problem Solving Methods for Insurance Agents," invited presentation for the National Association of Young Agents, St. Louis, Missouri, April 28, 1990.

"Liability Exposures for Independent Insurance Agents," Independent Insurance Agents of Wyoming, April, 1990.

"Risk Management for Contractors and Construction Risks," Independent Insurance Agents of Iowa, March 30, 1990.

"The Use of Insurance Experts," proceedings, New Mexico Trial Lawyers, January, 1990.


BOARD OF DIRECTORS:

Direct Benefit Reimbursement Corp., 1985 - 1993.Board of Trustees, Protectors Management Corp., Director, 1979 - 1993
U.N.C., Board Member, 1984 - 1985

PROFESSIONAL ASSOCIATION PARTICIPATION:

Colorado Chapter of Chartered Property and Casualty Underwriters, Guest Member.

Risk and Insurance Management Society, Guest Member.

American Risk and Insurance Association, Member, 1991 - present.

Western Decision Science Institute, Track Chair, 1998 - 1999.

American Association of University Professors, Local Chapter President, 1988.

COMMUNITY SERVICE:

Rotary International Club

College Credit Union, President, 1982-1996.

General Liability Video-Tape Advisory Committee, Colorado Surplus Lines Association, 1988-1991.

Continuing Education Advisory Board to the Colorado Commissioner of Insurance, 1988.

PROFESSIONAL DESIGNATIONS:

Chartered Property and Casualty Underwriter, 1976.

Licensed to practice law in Iowa, Inactive Status, 1973.

Licensed to practice law in Colorado, 1973.

Licensed to practice law in Federal Court, 1973.

UNIVERSITY SERVICE:

Student Affairs Committee, 1996 - 2001.

Administrative Council, 1998 - present.

Mission Review Committee, 1998 - present.

Financial Management Association Student Chapter, Advisor, 1980 - 1987 and 1992 - present.

Finance Department Search Committee, Chair, 1989 - present.

Pre-Law Advisory Committee, 1988 - present.

Finance Department Search Committee, Chair, 1996 & 1997.

Faculty Senate, 1996.

College Credit Union, Treasurer then President, 1976 - 1996.

Dean's Search Committee, College of Business, 1994.

Chairman, Department of Finance, Fall Semester, 1993.

COBA Curriculum Committee, 1991 - 1993.

AACSB Committee, 1991 - 1993.

Presidential Search Committee, 1992.

Chairman, Department of Finance and Insurance, 1985 - 1989.

Board of Trustees, Elected Faculty Representative, 1984 - 1985.

University Club Board of Directors, Treasurer, 1982 - 1985.

GRADUATE STUDENT COMMITTEES: (Last five years)

Doctoral:

May 1997, Harry C. Bull Jr., High School Administrators' Perception of Their Comfort Level with the Law of Safe Schools, Faculty Representative.

TEACHING:

Courses Taught (Last 5 years):

Legal Environment of Business
Business Administration and the Law
Principles of Risk and Insurance
Seminar in Business Law
Estate Planning and Life Insurance
Risk Management
Student and Foundation Fund (SAFF)
Business Finance
Investments

Courses Developed:

I assisted in the development of all insurance and/or law related courses.

HONORS AND AWARDS:

Finance Department Professor of the Year, 2000-2001.
Finance Department Professor of the Year, 1996-1997
Finance Department Professor of the Year, 1995-1996.
Finance Department Professor of the Year, 1992-1993.
Excellence Award, 1991.
Finance Department Professor of the Year, 1985-1986.
General Business Professor of the Year, 1985-1986.

# GARTH H. ALLEN

# DEPOSITION RECORD

| Case Name | Court and Case No. | Attorney |
|---|---|---|
| **2008** | | |
| Juanita Casango v. American Bankers Insurance Company of Florida | United States District Court for the District of Colorado, Civil Action Number 06-cv-02136-JLB-BNB | Mr. Billy George Hertzke, Esq. Denver, CO |
| The North River Insurance Company v. Bishop of Pueblo; The Marianists Province of the United States; et al. | United States District Court for the District of Colorado, Civil Action Number 06-cv-01971-WMD-CBS | Mr. William J. Brady, Esq. Denver, CO |
| Laurel Healthcare of Clovis, LLC v. Lexington Insurance Company | District Court, State of New Mexico, Bernalillo County, Case No. CV-2005—09405 | Mr. Mark Dow, Albuquerque, NM |
| Great-West Life v. Continental Casualty Company | District Court, City and County of Denver, Denver, Colorado, Case No. 06CV10150 | Mr. Gerald McDermott, Denver, CO |
| State Farm Life Insurance Company v. Carbajal | United States District Court for the District of Colorado, Civil Action Number 05-cv-00066-RPM | Mr. Gregory A. Gold, Denver, CO |
| **2009** | | |
| DeJean v. Stewart Title Guaranty Company | District Court, City and County of Denver, Denver, Colorado, Case No. 07 CV 10307 | Mr. Michael Rosenberg, Denver, CO |
| Hosseini v. Sandberg, Phoenix, and VonGontard, et. al. | Circuit Court for the County of St. Louis, State of Missouri, Case No. 06CC-002866 | Mr. Gerald Noce, Esq., St. Louis, MO |

| Case Name | Court and Case No. | Attorney |
| --- | --- | --- |
| Burleson v. Clarendon National Insurance Company, et. al. | District Court, State of New Mexico, Socorro, County, Case No. D-0725-CV-2006-00164 | Mr. Steven Vogel, Albuquerque, New Mexico |
| David Hauff v. Morgan Petterson and Safeco Insurance Company | United State District Court for the District of New Mexico, CIV. NO. 1:09-cv-00639-PJK-DJS | Mr. Houston Ross, Abuquerque, NM |
| Crowder v. Colorado Public Employees Retirement Association and Standard Insurance Company | District Court, County of Jefferson, Colorado, Case No. 07-CV-930 | Mr. Zachary C. Warzel, Denver, Colorado |
| Smith v. Time Insurance Company | District Court, City and County of Denver, Denver, Colorado, Case No. 07CV12372 | Mr. Michael J. Rosenberg, Denver, CO |
| Tenner v.  Encompass Ins. Co. of America | District Court, City and County of Denver, Denver, Colorado, Case No. 08CV504 | Mr. Jeremy A. Sitcoff, Denver, CO |

**2010**

| Case Name | Court and Case No. | Attorney |
| --- | --- | --- |
| Ryland v. Jeld-Wen v. Kemper | District Court, City and County of Denver, Denver, Colorado, Case No. 2008 CV 2688 | Mr. Bradley Levine, Denver, CO |
| Engel & Reiman, P.C., et al v. The First National Insurance Company | United States District Court for the District of Colorado, Civil Action Number 1:09-cv-00914-WYD-MEH | Mr. Jeremy A. Sitcoff, Denver, CO |
| David Hauff v. Morgan Petterson and Safeco Insurance Company (second deposition) | United State District Court for the District of New Mexico, CIV. NO. 1:09-cv-00639-PJK-DJS<br><br>District Court, City and County of Denver, Denver, Colorado,  Case Number: 09 CV 3252 | Mr. Houston Ross, Albuquerque, NM |

| Case Name | Court and Case No. | Attorney |
|---|---|---|
| Stresscon Corporation v. Rocky Mountain Structures, et al. | District Court, City and County of Denver, Denver, Colorado, Case Number: 09 CV 6878 | Ms. Brooke Pates, Denver, CO |
| Croghan v Farmers Insurance Exchange | United States District Court for the District of Colorado, Civil Action Number 09-cv-2542-REB-MJW | Mr. Zachary C. Warzel, Denver, CO |
| Aim High!, Inc. v. Hartford Fire Insurance Company | United States District Court for the District of New Mexico, Civil Action Number 1:09-CV-00454-RHS-LFG | Mr. Jeremy A. Sitcoff, Denver, CO |
| Walls v. The Paul Revere Life Insurance Company, et al. | United States District Court for the District of Colorado, Civil Action Number 08-cv-1760-WYD-MEH | Mr. Steven Henry, Albuquerque, NM |
| The Marianist Province of the U.S. v. Century Indemnity Company | | Mr. William J. Brady, Denver, CO |
| Kimberly Brown v. Progressive Insurance Company | District Court of Scottsbluff County, Nebraska, Case No. CI 08-802 | Mr. James L. Zimmerman, Scottsbluff, NE |

**2011**

| | | |
|---|---|---|
| Reetz Contruction  v. O'Malley, et al. | District Court, State of New Mexico, Bernalillo County, Case No. CV-2006-02488 | Mr. Steve Henry, Corrales, NM |
| Szentirmai v. American Family | District Court, City and County of Denver, State of Colorado, Case No. 2010CV213 | Ms. Kerri J. Atencio, Esq., Denver, CO |
| Whelan v. Minnesota Life Insurance Company | United States District Court for the District of Colorado, Civil Action Number 1:10-cv-01457-RPM | Mr. Zachary Warzel, Esq. Denver, CO |

3

| Case Name | Court and Case No. | Attorney |
|---|---|---|
| Prospect Resources, Inc. v. St. Paul Fire and Marine Insurance Company and USF&G | United States District Court for the District of Colorado, Civil Action Number 10-cv-017390WJM-BNB | Mr. Jeremy Sitcoff, Esq., Denver, CO |
| De Pippo v. Colorado Casualty, et al. | District Court, State of New Mexico, County of Santa Fe, Case No. D-101-CV-2009-03053 | Ms. Ellen S. Casey Santa Fe, NM |
| Progressive Casualty v. Vigil | District Court, State of New Mexico, Bernalillo County, Case No. CV-2002-09124 | Ms. Janet Santillanes, Albuquerque, NM |
| Sentry Ins. Co. v. St. Claire's Organics, Inc. | United States District Court for the District of Colorado, Civil Action Number 11-CV-00119-REB-BN B | Mr. Thomas L. Roberts, Denver, CO |
| 2012 | | |
| Hemphill v. Liberty Mutual Insurance Company | United States District Court for the District of New Mexico, Civil Action Number 10-cv-00861 LH/RHS | Ms. Maureen A. Sanders, Esq., Albuquerque, NM |

**COURT APPEARANCE RECORD**

**Garth H. Allen**


1.    LAUREL HEALCARE OF CLOVIS V. LEXINGTON          MAY 2008
   > SECOND JUDICIAL DISTRICT COURT
   > BERNAILLILO COUNTY, NM
   > CASE NO. CV-2005-09405
   > > MR. MARK DOW
   > > ALBUQUERQUE, NM BERNAILLILO COUNTY, NM


2.    SHEILA D. GENTRY V. FURR'S CAFETERIA, INC. AND      JULY 2008
   KEMPER INSURANCE COMPANY
   > FIRST JUDICAIL DISTRICT COUR
   > COUNTY OF SANTA FE
   > STATE OF NEW MEXICO
   > CASE NO. D-0101-CV-2007-00190
   > > MR. WILLAIAM J. WAGGONER
   > > SANTA FE, NM

3.    HOSSEINI V. SANDBERG, PHOENIX & VON GONTARD    MARCH 2009
   ET. AL.
   > IN THE CIRCUIT COURT FOR THE COUNTY
   > OF ST. LOUIS
   > STATE OF MISSOURI
   > CASE NO. 06CC-002866
   > > MR. GERARD T. NOCE, ESQ.
   > > ST. LOUIS, MO

4.    FISHER V. FIDELITY NATIONAL PROPERTY AND
   CASUALTY INSURANCE COMPANY                APRIL 2009
   > DISTRICT COURT, CITY AND COUNTY
   > OF DENVER, DENVER, CO
   > CASE NO. 07CV9841
   > > MR. ZACHARY WARZEL, ESQ.
   > > DENVER, CO

5.  AMERICAN NATIONAL PROPERTY AND CASUALTY
    INSURANCE COMPANY  V.  TINA AND ROBERT
    CLEVELAND, ET AL.                                      NOVEMBER, 2009
              SECOND JUDICIAL DISTRICT COURT
              BERNAILLILO COUNTY, NM
              CAUSE NO. CV 2008-10671
                    MR. JAMES C. ELLIS, ESQ.
                    ALBUQUERQUE, NM


6.  ECONO LUBE N'TUNE, INC. V. OWNERS INSURANCE
    CO.                                                    DECEMBER, 2009
              DISTRICT COURT, CITY AND COUNTY
              OF DENVER, DENVER, CO
              CASE NO. 06-CV-4215
                    MR. GREGORY GIOMETTI, ESQ.
                    DENVER, CO


7.  LYNETTE CASTILLO V. AUTO-OWNERS INSURANCE           MAY, 2010
    COMPANY
              DISTRICT COURT, ADAMS COUNTY, CO
              CASE NO. 2009CV627
                    MR. GREGORY GIOMETTI, ESQ.
                    DENVER, CO


8.  STRESSCON CORPORATION V. ROCKY MOUNTAIN            AUGUST, 2010
    STRUCTURES,  ET AL.
              DISTRICT COURT, CITY AND COUNTY
              OF DENVER, DENVER, CO
              CASE NO. 09 CV 3252
                    MS. KATHERINE VARHOLAK
                    DENVER, CO


9.  MELSSEN V. AUTO-OWNERS INSURANCE COMPANY      SEPTEMBER, 2010
              DISTRICT COURT, EL PASO COUNTY,
                    COLORADO
               CASE NO. 2009CV 6148
                    MR. GREGORY GIOMETTI
                    DENVER, CO

2

10.   CHARTRAND V ECONOMY PREMIER ASSURANCE NOVEMBER, 2010
            FIRST JUDICIAL DISTRICT COURT
            SANTA FE COUNTY, NM
            CAUSE NO. D-0101-CV-2009-00590
                  MR. STEVEN VOGEL, ESQ.
                  ALBUQUERQUE, NM

11.   LAWLEY V. ESURANCE INC.                          DECEMBER, 2010
            DISTRICT COURT, CITY AND COUNTY
            OF DENVER, DENVER, CO
            CASE NO. 2009CV7252
                  MR. GREGORY GIOMETTI
                  DENVER, CO

12.   REETZ CONSTRUCTION V. O'MALLEY, ET AL.   FEBRUARY, 2011
            SECOND JUDICIAL DISTRICT COURT
            BERNAILLILO COUNTY, NM
            CAUSE NO. CV-2006-02488
                  MR. STEVE HENRY, ESQ.
                  ALBUQUERQUE, NM

13.   ETHERTON V. AUTO-OWNERS                    AUGUST, 2011
            U.S. DISTRICT COURT
            DISTRICT OF COLORADO
            CASE NO. 10-CV-00892-MSK-KLM
                  MR. GREGORY GIOMETTI
                  DENVER, CO

14.   SHAW V. SHELTER MUTUAL INSURANCE COMPANY   AUGUST, 2011
            DISTRICT COURT
            CITY AND COUNTY OF DENVER
            STATE OF COLORADO
            CASE NO.  2010 CV 2968
                  MR. STEVEN J. DAWES, ESQ.
                  DENVER, CO

15.   PROGRESSIVE CASUALTY V. VIGIL              OCTOBER, 2011
            SECOND JUDICIAL DISTRICT COURT
            BERNAILLILO COUNTY, NM
            CAUSE NO. CV-2002-09124
                  MS. JANET SANTILLANES, ESQ.
                  ALBUQUERQUE, NM

3

16.    MILLENDER WHITE CONSTRUCTION CO. V. SHAY          JANUARY, 2012
       CONSTRUCTION CO.
                    DISTRICT COURT,
                    GRAND COUNTY, CO
                    CASE NO.: 2009CV70
                         MR. BRET GUNNELL, ESQ.
                         DENVER, CO