**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 11-cv-00789-CMA-BNB

NAN J. BAUMANN,

    Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,

    Defendant.

---

## ORDER REGARDING SUMMARY JUDGMENT MOTIONS

---

This matter is before the Court on Plaintiff's "Motion for Partial Summary Judgment and/or Motion to Strike Defendant's Affirmative Defense Regarding Collateral Source Doctrine" (Doc. # 49), and on Defendant's "Cross Motion for Determination of Matter of Law and Motion for Partial Summary Judgment." (Doc. # 68.)  In Plaintiff's Motion and in Defendant's Cross Motion, the parties request a determination of law regarding whether Defendant is entitled to a post-verdict setoff of Medicare Part A benefits that Plaintiff has received.  Plaintiff also requests that the Court exclude at trial any evidence of the amounts paid by Medicare for Plaintiff's injuries.  In Defendant's Motion for Partial Summary Judgment, Defendant moves for summary judgment on Plaintiff's third, fourth, and fifth claims.[1]  For the reasons stated below, Plaintiff's Motion

---

[1] Defendant also moved for summary judgment on Plaintiff's second claim for declaratory judgment.  However, Plaintiff has agreed to dismiss that claim and the issue is, therefore, moot. (Doc. # 74 at 2 n.2.)

is granted in part and denied in part, and Defendant's Cross Motion and Motion for Partial Summary Judgment is denied.

## I. BACKGROUND

**A.    FACTS**

On February 5, 2010, Plaintiff Nan Baumann, who was 89 years old at the time, was crossing Fourteenth Avenue in Denver, Colorado when she was struck by Elise Henderson, an underinsured motorist.  Plaintiff sustained injuries to her head and leg in the accident, requiring surgery to her leg.  Plaintiff's medical expenses resulting from the accident exceeded $200,000.

At the time of the accident, Plaintiff was covered by both Medicare Part A and Medicare Part B coverage.  Plaintiff was eligible for Medicare Part A because she paid mandatory Medicare employment taxes for such coverage through her employment with a law firm in Chicago, Illinois.  She was eligible for Medicare Part B because she paid monthly premiums for such coverage.  By virtue of Plaintiff's Medicare coverage, the total amount paid to Plaintiff's medical providers was $19,523.40.  The total amount of expenses billed to Medicare for Plaintiff's medical treatment related to the accident was $101,202.98.  (Doc. # 49-1, ¶ 12.)

At all times relevant to this case, Plaintiff was an insured of Defendant under two separate automobile policies issued by Defendant to Plaintiff's niece.  The policies at issue provided uninsured/underinsured motorist ("UM/UIM") benefits in the amount of $100,000 each.

On October 13, 2010, Plaintiff provided Defendant with notice of her claim for UM/UIM benefits, including a written settlement demand. Plaintiff claimed in excess of $200,00 in medical expenses, a figure that was inclusive of the amounts covered by Medicare Part A.[2] After receiving notice of Plaintiff's claim, Defendant requested additional information to assist in evaluating the claim. In late October 2010, Defendant requested and received a summary of Plaintiff's Medicare benefits. Ms. Sue Ann Pachl, a claim adjuster employed by Defendant, had difficulty deciphering the benefits summary. The parties dispute what actions Ms. Pachl took after determining that she could not interpret the benefits summary. Ms. Pachl testified at her deposition that she determined to resolve the difficulty by asking for a Medicare Secondary Payer Recovery Contractor ("MSPRC") release form in order to get the desired information from Medicare. Despite indicating that she had difficulty deciphering the Medicare summary in October, 2010, Ms. Pachl did not send a letter to Plaintiff asking for an MSPRC release form until February, 2011. (Doc. # 74-1 at 192:15-193:2.)

Defendant offered to settle Plaintiff's UIM claim for $22,000 on February 24, 2011. Plaintiff rejected that offer and filed a lawsuit against Defendant in Colorado state court that same day. At the time the lawsuit was commenced, Defendant had requested additional information, although the parties do not say whether that information concerned Plaintiff's Medicare benefits or was related to something else.

---

[2] The parties do not state what portion of the $19,523.40 was covered under Medicare Part A and what portion was covered under Medicare Part B. This is important as the parties only contest whether Defendant is entitled to a setoff of Medicare Part A benefits. (*See* Doc. # 60 at 2) ("[Defendant] does not dispute that Plaintiff's Medicare Part B benefits are a collateral source").

3

**B. PROCEDURAL HISTORY**

After Plaintiff filed suit in Colorado state court, Defendant removed the case to this Court on diversity grounds on March 28, 2011. (Doc. # 1.) Plaintiff's Amended Complaint (Doc. # 54) alleges five claims for relief: (1) negligence; (2) declaratory judgment; (3) breach of contract; (4) bad faith breach of insurance contract; and (5) a statutory bad faith claim under Colo. Rev. Stat. §§ 10-3-1115(1)(a).

Plaintiff filed its Motion for Partial Summary Judgment on August 15, 2011, moving the Court to grant summary judgment on Defendant's Affirmative Defense regarding the Collateral Source doctrine. (Doc. # 49.) Defendant responded on September 8, 2011 and Plaintiff replied on October 6, 2011. (Doc. ## 60, 70.)

On September 22, 2011, Defendant filed a "Cross Motion for Determination of Matter of Law," on the collateral source issue, and moved for summary judgment on Plaintiff's third, fourth, and fifth claims for relief.[3] (Doc. # 68.) Plaintiff responded on October 17, 2011, and Defendant replied on November 3, 2011. (Doc. ## 74, 84.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)

---

[3] The Court granted Defendant permission to file its combined motions in a single document. (Doc. # 67.)

(citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670-71. If the movant meets this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671

### III. ANALYSIS

**A.     DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

The Court begins its analysis with Defendant's Motion for Partial Summary Judgment on Plaintiff's Third, Fourth, and Fifth Claims.

   1.    Common Law Bad Faith Claim

Defendant appears to argue that Plaintiff's bad faith claim should be dismissed as a matter of law because it is based on a dispute over the value of her claim that is

"fairly debatable."[4]  (Doc. # 68 at 24.)  Plaintiff responds that there are genuine issues of material fact in dispute as to whether Defendant acted reasonably.

"Every contract in Colorado contains an implied covenant of good faith and fair dealing."  *Goodson v. Am. Standard Ins. Co.*, 89 P.3d 409, 414 (Colo. 2004).  In most contractual relationships, "a breach of this duty will only result in damages for breach of contract and will not give rise to tort liability."  *Id.*  However, insurance contracts are unique in that "an insurer's breach of the duty of good faith and fair dealing gives rise to a separate cause of action arising in tort."  *Id.*  This dual liability recognizes the special nature of insurance contacts, particularly the insured's motivation for entering into insurance contracts and the disparity in bargaining power between the insurer and the insured.  *See id.*

When an insured sues her insurer for bad faith breach of an insurance contract under the common law, the insured must prove that (1) the insurer acted unreasonably under the circumstances, and (2) the insurer either knowingly or recklessly disregarded the validity of the insured's claim.  *Id.* at 415.  With respect to the first element,[5] "[t]he

---

[4] Even if Defendant's position regarding the value of Plaintiff's claim is "fairly debatable," Colorado courts have expressly found that "although fair debatability is part of the analysis of a bad faith claim, it is not necessarily sufficient, standing alone, to defeat such a claim." *Sanderson v. Am. Family Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App. 2010).

[5] Defendant does not appear to address the second element of a common law bad faith claim. Although Defendant notes that it is the burden of the insured to establish an insurer's knowledge or reckless disregard of the fact that a valid claim has been submitted, Defendant offers no argument that Plaintiff has not met her burden. (Doc. # 58 at 24.)  In any event, the requirement that an insurer knowingly or recklessly disregarded the validity of the insured's claim is not an element of a statutory bad faith claim.  Thus, Plaintiff could still recover damages under Colo. Rev. Stat. § 10-3-1115, even if she failed to prove this element.  *See Kisselman v. Am. Family Mut. Ins. Co.*, --- P.3d ---, 2011 WL 6091708, at *10 (Colo. App. Dec. 8, 2011).

reasonableness of the insurer's conduct must be determined objectively." *Sanderson*, 251 P.3d at 1217. What is reasonable under the circumstances is ordinarily a question of fact for the jury. *See Bankr. Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 524 (Colo. App. 2008). Although reasonableness may be decided as a matter of law in appropriate circumstances, such as when there are no genuine issues of material fact in dispute, that is not the situation here. For example, Plaintiff alleges that Defendant failed to evaluate her claim in a timely fashion, delaying for over three months before requesting information it deemed necessary. Ms. Pachl's deposition testimony provides some evidentiary support for this allegation. (*See* Doc. # 74-1 at 192:15-193:2.) Such allegations can support a bad faith claim. *See Brodeur v. Am. Home Assur. Co.*, 169 P.3d 139, 147 n.7 (Colo. 2007) ("[B]ad faith is not limited to a decision to deny a claim; rather bad faith can occur in the unreasonable refusal to investigate a claim or to gather facts."); *see also Cork v. Sentry Ins.*, 194 P.3d 422, 427 (Colo. App. 2008) ("An insurer may face liability for bad faith breach of insurance contract . . . by failing reasonably to investigate a claim or to gather facts."). Given Plaintiff's advanced age, a reasonable jury could find that Defendant breached its duty of good faith and fair dealing by failing to investigate Plaintiff's claims and gather facts in a timely fashion.

Additionally, although a legitimate dispute exists as to whether Defendant was entitled to setoff of the $19,523.40 that was paid by Medicare Part A, that dispute does not explain why Defendant offered Plaintiff almost $180,000 less than she would have received had Defendant paid the maximum amount of benefits owed under Plaintiff's UM/UIM policies. Given that Plaintiff had documented medical expenses in excess of

$200,000 and she spent almost four months under full-time medical supervision before being released to go home, a reasonably jury could find that Defendant acted unreasonably by making a settlement offer of just $22,000.

    2.    <u>Breach of Contract Claim and Violation of Colo. Rev. Stat. § 10-3-1115 Claim</u>

Defendant also moves for summary judgment on Plaintiff's breach of contract claim and statutory bad faith claim, arguing that Plaintiff has not proven what benefits Defendant owed under the policies and that her claims therefore fail as a matter of law. (Doc. # 68 at 14.)

Plaintiff's breach of contract claim is premised on her contention that Defendant denied payment of UM/UIM benefits that she was owed under the policies. (Doc. # 54, ¶ 45.) Under Colorado law, a breach of contract claim requires proof of four elements: (1) the existence of a contract; (2) performance by the plaintiff; (3) failure to perform the contract by the defendant; and (4) damages suffered by the plaintiff as a result of the defendant's breach. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). All four elements are satisfied here. The existence of a contract and performance by Plaintiff are not in dispute. Plaintiff alleges that Defendant failed to perform the contract when it denied her benefits owed under her UM/UIM coverage, causing her to suffer damages.[6]

---

[6] Whether or not Defendant acted in bad faith is irrelevant to this claim. If it is determined that Plaintiff was denied benefits owed under her UIM coverage, then Defendant has breached the contract.

Defendant contends that Plaintiff cannot bring such a claim because the value of her claim has yet to be resolved by agreement or through the judicial process. (Doc. # 68 at 14-15.) The Court rejects this illogical argument out of hand. In effect, Defendant is arguing that Plaintiff's claims fail because she has not yet proven at trial what she will attempt to prove at trial. In the same breath, Defendant asserts that it is entitled to "have the amount of damages determined in a judicial forum." Plaintiff's breach of contract claim seeks to do exactly that: determine the amount of damages. To the extent that Defendant has failed to pay any benefits to Plaintiff that are determined owed, Defendant has breached its contract. Because there exists a genuine issue of material fact as to the amount of benefits Plaintiff was owed under her UM/UIM coverage, summary judgment is not appropriate on this claim.

Turning to Plaintiff's bad faith claim, Colo. Rev. Stat. § 10-3-1115(a) provides that: "A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." The statute explains, in a somewhat circular fashion, that an insurer's actions are unreasonable "if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action." *Id.* § 10-3-1115(2).

Defendant contends that an insurer's duty under § 10-3-1115(a) to pay "benefits owed" is not triggered until there is either an agreement between the insurer and the insured or a judicial determination as to the amount owed. Defendant asserts that it is "axiomatic that an insurer cannot unreasonably delay benefits owed until those benefits have been first determined." (Doc. # 68 at 15.)

Defendant has not cited to any Colorado state court decisions that would support this interpretation, and the Court has found none upon independent investigation.[7] However, two other courts in this district have firmly rejected identical arguments made by defendant insurers. *See Tadehara v. State Farm Mut. Auto. Ins. Co.*, No. 09-cv-02893, 2011 WL 4048782, at * 4 (D. Colo. Sept. 12, 2011) (Krieger, J.) (unpublished); (Doc. # 99-1, *Fiechtner v. Am. Family Mut. Ins. Co.*, No. 09-cv-02681, Martinez, J., Oral Ruling re Defendant's Rule 50(a) motion) (hereinafter, "Judge Martinez Oral Ruling"). The Court finds the decisions by Judge Krieger and Judge Martinez to be highly persuasive, and concurs with their shared conclusion that the interpretation of § 10-3-1115(a) offered by Defendant makes little sense.

Under Defendant's logic, any insurer would be insulated from liability under § 10-3-1115(a) as long as they dispute the amount of "benefits owed", no matter how unreasonable the insurer's position. Put another way, a defendant insurer

> could unreasonably delay and/or deny a valid claim for benefits and unreasonably refuse to settle the claim. Despite this bad faith, however, the insurer could not be found liable under the statute unless and until its insured prosecuted a successful breach-of-contract suit against the insurer and won a judgment for damages. This would cause the insurer to first need to successfully prosecute the breach-of-contract suit against the insurer, and then subsequently bring an entirely separate lawsuit seeking to prove a violation of C.R.S. [§] 10-3-1115 . . . [this] surely cannot be what the [Colorado] General Assembly intended.

---

[7] Because Colo. Rev. Stat. § 10-3-1115 was enacted in 2008, there is a scarcity of case law interpreting the statute.

Judge Martinez Oral Ruling at 5; *see also Tadehara*, 2011 WL 4048782, at *5. Thus, the fact that the benefits owed to Plaintiff is currently in dispute does not mean that Plaintiff's statutory bad faith claim fails as a matter of law.

For these reasons, the Court denies Defendant's Partial Summary Judgment Motion.

**B.    PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S CROSS MOTION FOR DETERMINATION OF MATTER OF LAW**

The principal issue in these cross motions (Doc. ## 49, 68) is whether Defendant is entitled to a post-verdict setoff for Plaintiff's medical expenses that were covered by Medicare Part A. At the outset, the Court recognizes that Plaintiff's motion and Defendant's cross-motion are premature. Under the collateral source statute, any reduction in an award to a plaintiff is determined "after the finder of fact has returned its verdict." Colo. Rev. Stat. § 13-21-111.6; *see also Seely v. Archuleta*, No. 08-cv-02293, 2011 WL 2883625, at *6 (D. Colo. July 18, 2011) (unpublished). Nevertheless, the Court will make a pre-trial determination because the issue of whether Defendant may setoff Medicare Part A payments is intertwined with the issue of whether evidence of such payments is admissible at trial. Plaintiff contends that benefits she received as a result of her Medicare Part A coverage should not be setoff from any award of damages that she may receive at trial. The Court agrees.

A collateral source is one which is distinct from the funds of the defendant. *Berg v. United States*, 806 F.2d 978, 984 (10th Cir. 1986) (applying Colorado law). At common law, the collateral source rule provided that "compensation or indemnity

11

received by an injured party from a collateral source, wholly independent of the wrongdoer and to which he has not contributed, will not diminish the damages otherwise recoverable from the wrongdoer." *Colorado Permanente Medical Group, P.C. v. Evans*, 926 P.2d 1218, 1230 (Colo. 1996). The purpose of the collateral source rule "was to prevent the defendant from receiving credit for such compensation and thereby reduce the amount payable as damages to the injured party." *Id.* (quoting *Van Waters & Rogers, Inc. v. Keelan*, 840 P.2d 1070, 1074 (Colo. 1992). The rationale was that:

> "[i]f either party is to receive a windfall, the rule awards it to the injured plaintiff who was wise enough or fortunate enough to secure compensation from an independent source, and not to the tortfeasor, who has done nothing to provide the compensation and seeks only to take advantage of third-party benefits obtained by the plaintiff."

*Volunteers of Am. Colo. Branch v. Gardenswartz*, 242 P.3d 1080, 1083 (Colo. 2004).[8] Under the common law, the Colorado Supreme Court has held that "defendants [are] not entitled to a reduction of damages based upon the proceeds of Medicare coverage." *Powell v. Brady*, 496 P.2d 328, 333 (Colo. 1972); *see also Berg*, 806 F.2d at 984-85 (holding that Medicare benefits are a collateral source under Colorado law). Thus,

---

[8] Defendant appears to assert that the collateral source rule does not extend to UM/UIM insurers, contending that the purpose of the rule is to avoid a windfall to the tortfeasor, not to avoid a windfall to the insurer. (*See* Doc. # 60 at 7.) There is no merit to this argument. Colorado state courts routinely analyze whether setoff is appropriate in UM/UIM actions against defendant insurers. Defendant should be particularly sensitive to this fact as this is not the first time it has been a defendant in Colorado. *See, e.g.*, *Barnett v. Am. Family Mut. Ins. Co.*, 843 P.2d 1302, 1309-1310 (Colo. 1993); *Levy v. Am. Family Mut. Ins. Co.*, --- P.3d ---, 2011 WL 322527 (Colo. App. Feb. 3, 2011). In *Barnett*, the Colorado Supreme Court stated that insurers "may not absolve their liability under UM/UIM provisions by reducing the amount of UM/UIM coverage they contracted to provide by payments received for separate and distinct insurance benefits." 843 P.2d at 1307.

under Colorado common law, Medicare payments were considered collateral sources and exempt from setoff.

In 1986, the Colorado General Assembly modified the common law collateral source rule by enacting Colo. Rev. Stat. § 13-21-111.6. Section 13-21-111.6 has two clauses. The first clause directs a trial court, following a verdict, to reduce a plaintiff's award for any benefits the plaintiff received from collateral sources. The second clause, however, commonly known as the "contract clause," retains the collateral source rule for certain benefits. *See Gardenswartz*, 242 P.3d at 1084. The "contract clause" provides that "the verdict shall not be reduced by the amount by which [the injured plaintiff] has been or will be wholly or partially indemnified or compensated **by a benefit paid as a result of a contract entered into and paid for by or on behalf of such person**." Colo. Rev. Stat. § 13-21-111.6. (emphasis added).

The contract clause has been construed broadly because the Colorado General Assembly did not intend this exception to be limited to private insurance contracts. As explained in *Keelan*, "the legislative discussions . . . evince an intent that other types of benefits such as individually held disability and life insurance benefits, social security benefits, death benefits, and maybe some unemployment benefits" also be excluded. 840 P.2d at 1079 (internal quotation and citation omitted). Thus, the contract exception is "broad enough to cover contracts for which a plaintiff gives some consideration,

whether it be in the form of money or employment services, with the expectation of receiving future benefits in the event they become payable under the contract." *Id*.

The Court begins its analysis of whether Medicare payments remain exempted from setoff after the enactment of § 13-21-111.6 with the observation that statutes such as § 13-21-111.6 that are in derogation of the common law must be strictly construed. *See Gardenswartz*, 242 P.3d at 1084. Although Colorado courts have not addressed whether Medicare Part A benefits constitute a "contract entered into and paid by or on behalf of such person" so as to render any such benefits exempt from setoff, the Colorado Supreme Court has held that Social Security Disability Income ("SSDI") benefits are protected under the contract clause from setoff. *See Barnett*, 843 P.2d at 1310. Moreover, in *McDowell v. Bednarek*, Judge Daniel found that Colorado courts would hold Medicare Part A benefits exempt from setoff.[9] (Doc. # 49-2 at 9-10) (hereinafter, "Judge Daniel Order".)

"Medicare Part A is a federal program which pays hospital and related benefits to individuals age 65 or over." *Hodge v. Middletown Hosp. Ass'n*, 581 N.E.2d 529 (Ohio 1991). "Part A benefits are paid as a result of mandatory payroll or self-employment taxes to those persons 65 and over who meet the conditions for Social Security benefits." *Witherspoon v. St. Paul Fire & Marine Ins. Co.*, 548 P.2d 303, 305 (Wash. 1976); *see also Martinez v. Richardson*, 472 F.2d 1121, 1123 (10th Cir. 1973). Notably,

---

[9] Defendant argues that the Court should ignore *McDowell* because the defendant was the tortfeasor, rather than an insurer. This distinction makes no analytical difference. *See* footnote 9, *supra*.

Medicare Part A is not considered a welfare plan because beneficiaries of Medicare pay for their coverage through Social Security taxes.  *See Witherspoon*, 548 P.2d at 306.

In *Barnett*, the Colorado Supreme Court held that the plaintiff's SSDI benefits were protected by the contract clause and not subject to setoff.  The same conclusion is dictated in this case because there is no meaningful difference between Medicare and SSDI benefits given that they are funded by the same employment taxation scheme. *See* Judge Daniel Order at 9 ("Medicare benefits, like [SSDI] benefits are provided to taxpayers who have paid into the Federal Social Security system."); *Berg*, 806 F.2d at 985 ("Medicare benefits received by [the plaintiff] . . . were funded by the same employment tax scheme that funded the Social Security disability benefits . . . .").

Like the SSDI benefits at issue in *Barnett*, Medicare A benefits are "the result of payments made under a contributory insurance system, rather than gratuities or public assistance."  *Barnett*, 843 P.2d at 1309; *see also Witherspoon*, 548 P.2d at 306 ("Medicare is not a free or charitable program under which a governmental agency provides hospitalization services or expenses without cost to aged citizens.") (internal quotation omitted).  Although an employee does not voluntarily contract to pay Part A benefits, such benefits "represent money earned and contributed through the efforts of a working individual . . . and such payments, like proceeds on an insurance policy, substitute as income" to the employee who finds herself eligible for such benefits. *Barnett*, 843 P.2d at 1309.

Defendant argues that setoff is appropriate because it also contributes to Medicare through mandatory payroll taxes.  (Doc. # 60 at 10.)  In *McDowell*, Judge

Daniel rejected this same argument as "nonsensical" because the "[d]efendants were not [the plaintiff's] employer, and made no contribution to Medicare on behalf of Plaintiff." (Judge Daniel Order at 13.)  In the instant case, Plaintiff paid taxes that went into the Medicare trust fund as a result of her employment with a law firm in Chicago, Illinois.  Furthermore, Defendant's argument is not persuasive in light of *Barnett*, which exempted setoff for SSDI benefits despite the fact that both employers and employees contribute to social security.  *Barnett*, 843 P.2d at 1309-10; *see also Technical Computer Servs., Inc. v. Buckley*, 844 P.2d 1249, 1254 (Colo. App. 1992) (holding that unemployment compensation benefits are not subject to setoff, even though employer paid taxes going to unemployment compensation), *cert denied* (1993).  Accordingly, the Court finds that Medicare Part A benefits constitute a "contract entered into and paid by or on behalf of such person" and are, thus, exempt from setoff.

Plaintiff also moves in her summary judgment motion for the exclusion of any evidence concerning the amounts paid by Medicare for her injuries.  The Court will address the admissibility of such evidence at the Final Trial Preparation Conference, scheduled for January 17, 2012.  To the extent that Plaintiff moves the Court to exclude evidence of the amounts paid by Medicare to cover her medical expenses, that portion of Plaintiff's summary judgment motion is denied without prejudice.

## IV. **CONCLUSION**

For the foregoing reasons, it is ORDERED that Plaintiff's "Motion for Partial Summary Judgment and/or Motion to Strike Defendant's Affirmative Defense Regarding Collateral Source Doctrine (Doc. # 49) is GRANTED IN PART AND DENIED IN PART.

Case 1:11-cv-00789-CMA-BNB   Document 136   Filed 01/17/12   USDC Colorado   Page 17 of 17

17

Specifically, Plaintiff's motion for summary judgment is GRANTED to the extent it seeks to preclude Defendant from receiving a post-trial setoff of any award of damages for Medicare Part A payments. Plaintiff's motion for summary judgment is DENIED WITHOUT PREJUDICE insofar as it seeks to exclude evidence from trial of the amounts paid by Medicare to cover her medical expenses.

It is FURTHER ORDERED that Defendant's "Cross Motion for Determination of Matter of Law and Motion for Partial Summary Judgment" (Doc. # 68) is DENIED.

DATED:  January   17  , 2012

BY THE COURT:

*Christine M Arguello*

_____
CHRISTINE M. ARGUELLO
United States District Judge

17